Dorothy J. SMITH *v.* QUALITY FORD, Inc.

95-1041                                    920 S.W.2d 497

Supreme Court of Arkansas
Opinion delivered April 29, 1996

*John W. Walker, P.A.*, by: *John W. Walker* and *Mark Burnette*, for appellant.

*Everett O. Martindale*, for appellee.

TOM GLAZE, Justice. On June 15, 1987, Quality Ford hired Dorothy Smith as an officer manager, and this litigation ultimately ensued as a result of the company's discharge of Smith in October 1991. During her more than four years of employment, Smith's responsibilities included co-signing checks and insuring invoices were paid. Larry Duncan, who was hired in 1988, was Smith's immediate supervisor, and after being on the job for a short period of time, he formed the suspicion Smith was stealing company funds, but he had no proof. Duncan related his suspicions to LeMon Henderson, the majority stockholder of the company, who told Duncan to get a replacement for Smith. Duncan had difficulties in obtaining a replacement, so Smith continued in her position.

In 1989, Henderson suspected either Duncan or Smith were converting company funds, so he hired certified public accountants to determine if employees were embezzling funds. Eventually in 1991, one of the accountants discovered that Smith had been altering Quality Ford checks and converting those checks and funds to her personal accounts. In August 1991, Smith, who is black, filed an EEOC claim, alleging racial discrimination by Duncan, who is white. Later in October 1991, Henderson, who is black, suspended Smith, and informed Smith she had failed to carry out her duties by not forwarding correspondence from the EEOC to his attention. Smith immediately responded by filing another EEOC claim, alleging retaliatory discharge, and later filed another complaint alleging

gender discrimination.

On November 13, 1991, Quality Ford filed a civil suit against Smith, seeking the money she converted, and the next day, Smith was arrested and charged with the crime of embezzlement. In December 1991, Smith answered Quality Ford's suit, alleging she and Henderson had been involved romantically, and during that relationship, Henderson had authorized Smith's altering checks to defraud the Internal Revenue Service, and also to divert company funds to Henderson and Duncan. She further filed a counterclaim alleging defamation, malicious criminal and civil prosecution, false arrest, outrage, wrongful termination, breach of contract, and her Title VII claims of racial and gender discrimination and retaliatory discharge.

On October 8, 1992, Smith was acquitted of the criminal charge of theft. However, in the civil suit, the trial court found Smith had altered and misappropriated twenty Quality Ford checks, totalling $73,108.67. The trial court specifically found that Smith was unbelievable and that she had devised a scheme to defraud Quality Ford of funds by altering checks entrusted to her care. The trial court did hold Smith had prevailed on her Title VII claim of retaliatory discharge, and awarded her damages in the nominal amount of $1,000.00 and attorneys fees in the sum of $5,000.00. The trial court ordered a set off of these awards against the $73,108.67 Smith owed Quality Ford. Furthermore, the trial court held Henderson had breached Smith's employment contract, and determined Henderson owed Smith two percent (2%) of the company's annual net profits for the years 1988 through October 1991. The court directed that, after the parties arrived at the amount of the profits owed Smith, that sum should also be set off against the $73,108.67 Smith owed Quality Ford. On March 15, 1995, the trial court entered judgment in favor of Quality Ford in the amount of $52,965.00. Smith brings this appeal from that judgment.

■ In her initial point for reversal, Smith agrees that the trial court correctly awarded her attorney's fees, but argues that it erred in the assessment of that fee. Smith cites *Hensley v. Eckerhart*, 461 U.S. 424 (1983), for the proposition that a prevailing party of a Title VII claim is entitled to a reasonable fee, and that fee is to be determined by the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This is commonly

called the "lodestar" fee. The *Hensley* court further held that where the plaintiff achieved only limited success, the trial court should award only that amount of fees that is reasonable in relation to the results obtained.

■ While Smith argues that the trial court failed to follow the *Hensley* formula when setting the $5,000.00 attorney's fee or to state why it might have reduced the lodestar amount, she concedes she failed to submit any evidence of (1) the hours expended by her counsel, (2) the counsel's rate, or (3) any other relevant facts bearing on the fee amount. The *Hensley* decision clearly holds that the party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Hensley,* at 433.

Here, the trial court awarded Smith's counsel an attorney's fee in its December 9, 1994 order even though counsel failed to submit any documents or evidence; counsel never objected either to the manner or amount of the fees awarded. In fact, although the trial court's final judgment was not entered until March 15, 1995, Smith still interposed no objections. She only does so for the first time in this appeal.

■ This court has held that it will not contenance an argument raised for the first time on appeal. *Crockett & Brown, P.A.* v. *Courson,* 312 Ark. 363, 849 S.W.2d 938 (1993); *see also McElroy* v. *Grisham,* 306 Ark. 4, 810 S.W.2d 933 (1991) (the burden of obtaining a ruling from the court is on the attorney requesting fees, and the objections and matters left unrecorded below are waived and may not be relied upon on appeal). For the same reasons, we also do not reach Smith's argument that the trial court erred in setting off counsel's attorney's fees against Quality Ford's judgment.

Smith next argues that she proved a prima facie case of race and sex discrimination and that the trial court failed to give the required findings needed for a review of determining whether the facts as applied might be due to a misunderstanding of the law. Smith cites *Jones* v. *Jones Bros. Const. Corp.,* 879 F.2d 295 (7th cir. 1989), where the federal appellate court remanded the civil rights case for further findings because the district court's opinion was not supported by adequate findings of fact and law. *See also Chandler* v. *City of Dallas, Tex.,* 958 F.2d 85 (5th Cir. 1992).

■ Here, Ark. R. Civ. P. 52(a) is controlling and provides in relevant part as follows:

> *If requested by a party,* in all contested actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58[.]. (Emphasis added.)

While Arkansas's Rule 52 is similar to the federal rule, Fed. R. Civ. P. 52(a), the Arkansas rule retains prior state law by which the failure of a party to request special findings of fact amounted to a waiver of that right. Reporter's Notes (as modified by the Court) to Rule 52, n. 1 [citing *Anderson* v. *West Bend Co.*, 240 Ark. 519, 400 S.W.2d 495 (1966)]. Further, Rule 52(b) provides that upon motion of a party within ten days after entry of judgment, the court may amend its findings and/or judgment accordingly.

■ In the present case, there is nothing in the record to show Smith requested that the trial court make specific findings of fact and conclusions of law either prior to or after entry of the judgment. Because Smith made no request for findings, she waived her right under Rule 52.

For the reasons above, we affirm.