The MEGA LIFE and HEALTH INSURANCE COMPANY, Charles Hall, and Jim Dawson *v.* Michael D. JACOLA and Pamela R. Jacola, Individually and as Parents and Natural Guardians of Kristen M. Jacola, a Minor

96-1343 954 S.W.2d 898

Supreme Court of Arkansas
Opinion delivered October 16, 1997

Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., by: R. T. Beard III and Mark N. Halbert, for appellants.

Lovell & Nalley, by: John Doyle Nalley, for appellees.

ANNABELLE CLINTON IMBER, Justice. This is an interlocutory appeal from an order certifying a class action. See Ark. Sup. Ct. R. 1-2(a)(11); Ark. R. App. P.—Civ. 2(a)(9). We affirm the trial court's order.

On September 1, 1994, the appellees, Michael and Pamela Jacola, purchased a group health insurance policy from the appellants, Mega Life & Health Insurance Company ("Mega"), for themselves and their two dependents. The group policy was issued through the Alliance for Affordable Health Care ("Alliance") which served as group master policyholder. Soon thereafter, the Jacolas' minor daughter received outpatient medical treatment, and Mega refused to pay the medical bills.

On May 17, 1995, the Jacolas filed a tort action against Mega and the two agents who sold them the policy alleging numerous individual theories for recovery including negligence, fraud, misrepresentation, and false advertising. In their complaint, the Jacolas also requested class certification so that they could represent

approximately 400 other Arkansans who had purchased identical health insurance policies from Mega.

In their motion for class certification, the Jacolas alleged that Alliance was a sham organization thereby making the Mega health insurance policies individual, instead of group, policies. Additionally, the Jacolas asserted on behalf of the proposed class that the policies they purchased from Mega were void in two respects. First, the Jacolas asserted that the policies were void because Mega failed to comply with Ark. Code Ann. § 23-98-107(a) (Repl. 1992), which requires issuers of minimum basic benefit policies to obtain from their prospective insureds a written statement acknowledging the limited nature of the coverage provided. The Jacolas also claimed that the policies were void because Mega failed to comply with Insurance Commission Rule 18 which requires a stamped notification on the first page of an individual health insurance policy that does not cover outpatient services. On behalf of the class, the Jacolas asked the court to declare the policies void, force Mega to withdraw use of the policy in Arkansas, grant compensatory damages in the amount of the premiums collected from the insured for the past five years, and award punitive damages.

The trial court conducted two hearings on the Jacolas' certification motion. On August 8, 1996, the trial court granted the Jacolas' motion for certification pursuant to Ark. R. Civ. P. 23. In its order, the court found that the Jacolas had satisfied the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy. The trial court, however, did not make specific findings regarding the existence of the Rule 23(b) requirements of predominance or superiority.

■■ On appeal, Mega asserts that the trial court's order of certification is erroneous because the Jacolas failed to satisfy each of the six requirements listed in Rule 23(a) & (b). According to Ark. R. Civ. P. 23, a trial court may certify a class only if the following conditions are met:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical

of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Ark. R. Civ. P. 23(a). Additionally, the court must find that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Ark. R. Civ. P. 23(b). A trial court has broad discretion in determining whether these elements have been satisfied, and we will not reverse absent an abuse of that discretion. *Direct Gen. Ins. Co. v. Lane*, 328 Ark. 476, 944 S.W.2d 528 (1997); *Farm Bureau Mutual Ins. Co. v. Farm Bureau Policy Holders & Members*, 323 Ark. 706, 918 S.W.2d 129 (1996); *Cheqnet Sys., Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995).

■ ■ Citing *Farm Bureau Mutual Ins. Co. v. Farm Bureau Policy Holders & Members*, 323 Ark. 706, 918 S.W.2d 129 (1996), Mega asserts that a trial court is not allowed to look beyond the pleadings to determine whether the requirements of Rule 23 have been satisfied. We, however, rendered no such ruling in *Farm Bureau*. Rather, we clearly enunciated that neither the trial court nor the appellate court may delve into the merits of the underlying claim when determining whether the requirements of Rule 23 have been satisfied. *Id.* Although a trial court may not consider whether the plaintiffs have a cause of action or if they will ultimately prevail on the merits, the court may hold a hearing to determine whether the requirements of Rule 23 have been satisfied. In fact, two such hearings were held in this case and both sides were allowed to present testimony and introduce documentary evidence. Thus, we conclude that Mega's interpretation of *Farm Bureau* is erroneous.

## I. Failure to Make Findings

First, Mega asserts that we must reverse the certification order because the trial court failed to make specific findings regarding the existence of the Rule 23(b) requirements of predominance and superiority. This issue is governed by Ark. R. Civ. P. 52(a) which states that "findings of fact and conclusions of law are

unnecessary on decisions of motions under these Rules," but that the court shall enter such specific findings and conclusions upon the request of a party. It does not appear from the abstract that Mega ever requested that the court make such specific findings in regard to the predominance and superiority requirements of Rule 23(b).

■ Moreover, Rule 52(b) states that upon a motion of a party made no later than ten days after the entry of judgment, the court may amend its findings of fact or make additional findings. Thus, Mega had ten days after the order of certification was entered to ask the trial court to make additional findings regarding the Rule 23(b) elements. Mega, however, failed to make such a request. Because Mega failed to request specific findings in regard to the Rule 23(b) elements either prior to or after the entry of the order of certification, we hold that it has waived this issue on appeal. *See Smith v. Quality Ford, Inc.*, 324 Ark. 272, 920 S.W.2d 497 (1996); *Brown v. Seeco, Inc.*, 316 Ark. 336, 871 S.W.2d 580 (1994).

■ Implicit in the trial court's order granting class certification is the court's ultimate conclusion that all six elements of class certification have been satisfied. Thus, on appeal we hold that Mega has waived only its right under Ark. R. Civ. P. 52 to have the trial court *enter specific findings in its order* regarding the satisfaction of each of the six elements of class certification. Mega has not, however, waived its right to contest the trial court's *ultimate conclusion* that all six elements have been satisfied as required by Ark. R. Civ. P. 23. We agree with the dissent that there must be evidence in the record to support the trial court's ultimate conclusion that all six elements of class certification, including the predominance and superiority requirements of Rule 23(b), have been satisfied. We, however, disagree with the dissent's assertion that we must reverse a certification order that does not make specific findings regarding the Rule 23(b) requirements when the complaining party failed to request specific findings under Rule 52. Accordingly, we find no merit to Mega's first argument on appeal.

■ We also must respond to the dissent's contention that the certification order must be reversed because the trial court failed to conduct a "rigorous analysis" of the Rule 23(b) requirements of predominance and superiority. In support of this argument, the dissent cites *Arthur v. Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995). The *Arthur* opinion, however, is devoid of any language requiring the trial court to conduct a "rigorous analysis." In fact, we are unable to find any Arkansas case requiring the trial court to conduct a rigorous analysis, or for that matter, any case that describes exactly what such an analysis entails. Instead, we have consistently held that we will reverse a trial court's certification order *only* when the court has abused its discretion. *Direct Gen. Ins. Co. v. Lane*, 328 Ark. 476, 944 S.W.2d 528 (1997); *Farm Bureau Mutual Ins. Co. v. Farm Bureau Policy Holders*, 323 Ark. 706, 918 S.W.2d 129 (1996). In making this determination, we have consistently reviewed the evidence in the record to determine whether it supports the trial court's ultimate conclusion regarding certification. *See, e.g., Direct Gen., supra; Arthur, supra;* We have not, as argued by the dissent, previously required the court to enter into the record a detailed explanation of why it concluded that certification was proper, and we refuse to impose such a requirement upon the trial court at this time.

## II. Requirements of Rule 23

Next, Mega claims that the order of certification must be reversed because the Jacolas failed to satisfy each of the six requirements of Rule 23. We disagree with this assertion, and accordingly we affirm the trial court's order of certification.

### A. Numerosity

■ The first requirement of class certification is "that the class is so numerous that joinder of all members is impractical." Ark. R. Civ. P. 23(a)(1). In *Cheqnet Systems, Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995), we held that:

> the exact size of the proposed class and the identity of the class members need not be established for the court to certify a class,

and the numerosity requirement may be supported by common sense.

We have not adopted a bright-line rule to determine how many class members are required to satisfy the numerosity requirement. *See, e.g. Summons v. Missouri Pac. R.R.*, 306 Ark. 116, 813 S.W.2d 240 (1991) (approving a class of several thousand claimants); *International Union of Elec., Radio, & Mach. Workers v. Hudson*, 295 Ark. 107, 747 S.W.2d 81 (1988) (declaring that "at least several hundred" class members were sufficient); *Cooper Communities, Inc. v. Sarver*, 288 Ark. 6, 701 S.W.2d 364 (1986) (holding that 184 potential class members were enough); *City of North Little Rock v. Vogelgesang*, 273 Ark. 390, 619 S.W.2d 652 (1981) (rejecting a class of only seventeen potential plaintiffs).

█ In this case, the trial court found that the numerosity requirement had been satisfied because the Jacolas provided evidence that there were over 400 Arkansans who had purchased identical policies from Mega. Mega attempts to defeat the trial court's finding by declaring that only fourteen of these policyholders purchased their policies from the same agents as the Jacolas, and that only one of these fourteen policyholders (other than the Jacolas) has been denied benefits. This argument, however, ignores the Jacolas' underlying claim on behalf of the class that the policies are void irrespective of any representations made by a particular agent. Further, Mega's argument addresses the merits of the underlying claim. We have continuously held that whether the plaintiffs have stated a cause of action or will ultimately prevail on the merits is immaterial to our determination of whether the trial court erred when it found that the class should be certified under Rule 23. *Direct Gen., supra; Farm Bureau, supra; First Nat'l Bank v. Mercantile Bank*, 304 Ark. 196, 801 S.W.2d 38 (1990). Thus, we conclude that the trial court did not abuse its discretion when it found that the numerosity requirement had been satisfied.

### B. Commonality

The second requirement of Rule 23 is that there are "questions of law or fact common to the class." Ark. R. Civ. P. 23(a)(2). In this case, the questions common to all members of

the class are: 1) whether Alliance is a true group master policy-holder; 2) whether the policies issued by Mega are group or individual health insurance polices; 3) whether the policies are void because Mega failed to obtain written acknowledgements from their insureds that the policies were minimum basic benefits policies as required by Ark. Code Ann. § 23-98-107(a) (Repl. 1992); and 4) whether the policies are void because Mega failed to comply with Insurance Commission Rule 18 which requires a stamped notification on the first page of an individual health insurance policy that does not cover outpatient services.

 If these issues are resolved in favor of the class, the individual members will have suffered a common injury of paying premiums for a void insurance policy. Thus, the class members may be entitled to rescission of the policies and a refund of the premiums paid, or coverage for outpatient services. Thus, we conclude that the trial court did not abuse its discretion when it found that the commonality requirement had been satisfied.

## C. Predominance

The next logical issue is whether the "common claims predominate over any questions affecting only the individual members" as required by Rule 23(b). As previously discussed, there are several issues common to the class members. However, there are also several individual issues such as whether misrepresentations were made by the agents selling the policies, whether the insureds relied upon these misrepresentations, and the extent of each individual's damages. Thus, the greater issue presented by this case is whether these common issues predominate over the individual issues such that certification is proper.

In *International Union of Electrical, Radio & Machine Workers v. Hudson*, 295 Ark. 107, 747 S.W.2d 81 (1988), we held that the predominance element could be satisfied if the preliminary, common issues were resolved before the individual issues. In *Hudson*, non-union workers sued the union for lost wages and personal and property damages that they suffered when they attempted to cross the picketline. *Id.* The case presented one common issue of whether the union could be held liable for the actions of its mem-

bers, and several individual issues regarding the extent of damages. *Id.* In *Hudson*, we explained that:

> By limiting the issue to be tried in a representative fashion to the one that is common to all, the trial court can achieve real efficiency. The common question here is whether the unions can be held liable for the actions of their members during the strike. If that question is answered in the negative, then the case is over except for the claims against the named individual defendants which could not be certified as a class action. If the question is answered affirmatively, then the trial court will surely have "splintered" cases to try with respect to the damages asserted by each member of each of the subclasses, but efficiency will still be achieved, as none of the plaintiffs would have to prove the unions' basic liability.

*Id.* We also found that this bifurcated process was consistent with Rule 23(d) which allows the trial court to enter orders necessary for the appropriate management of the class action. *Id.*

Since *Hudson*, we have approved this bifurcated approach to the predominance element by allowing the trial courts to divide the case into two phases: 1) certification for resolution of the preliminary, common issues; and 2) decertification for resolution of the individual issues. For example, in *Security Benefit Life Ins. Co. v. Graham*, 306 Ark. 39, 810 S.W.2d 943 (1991), we allowed the court to certify a class action contesting the validity of an annuity policy despite the fact that there were individual issues regarding the law in thirty-nine states where the policies were issued because we found that "resolution of the common questions of law or fact would enhance efficiency for all parties, even if individual claims remained to be adjudicated."

Likewise, in *Summons v. Missouri Pacific Railroad*, 306 Ark. 116, 813 S.W.2d 240 (1991), we affirmed a class action of plaintiffs who claimed they suffered a variety of damages when the defendant's train overturned and released volatile and toxic chemicals into the area. The common issues were the existence of strict liability, and whether the railroad was negligent, while the individual issues were proximate causation and the extent of damages suffered by each class member. *Id.* As in *Hudson* and *Security Benefit*, we held that the case should proceed as a class action for reso-

lution of the preliminary, common issues. We also admonished that predominance may not be determined by comparing the mere number of individual versus common claims. *Id.*

However, in *Arthur v. Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995), we found that the bifurcated approach did not adequately resolve the predominance problem. In *Arthur*, the proposed class was a group of patients who had an experimental product called "Orthoblock" surgically implanted into their spines. *Id.* The common issue in *Arthur* was whether Orthoblock was a defective product, and there were numerous individual issues regarding informed consent, proximate causation, and damages. *Id.* The preliminary issue in *Arthur*, was what the patient knew prior to receiving the implantation. *Id.* If the patient was fully aware of the risks of the experimental treatment, then all subsequent issues would be rendered moot. *Id.* The preliminary issue, therefore, was an individual issue instead of a common issue as in *Hudson*, *Security Benefit*, and *Summons*, thus rendering the bifurcated approach utilized by those cases impractical.

We find that this case is like *Hudson*, *Security Benefit*, and *Summons*, in that the preliminary issues for resolution are issues that are common to all class members. For instance, the court must first determine whether the Alliance is a true group master policyholder, and whether the policy Mega issued was a group or individual policy. If the court finds that Mega issued a true group policy, then the notice requirements under Ark. Code Ann. § 23-98-107(a) and Insurance Commission Rule 18 will be rendered moot. Because we hold that the common issues presented by this case must be resolved prior to addressing the individual issues as in *Hudson* and its progeny, we conclude that the Jacolas have satisfied the predominance requirement.

## D. Superiority

The next element of Rule 23, is that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Ark. R. Civ. P. 23(b). We find that by first addressing the issues common to all members of the class, the court can achieve real efficiency. *See Lemarco, Inc. v. Wood,*

305 Ark. 1, 804 S.W.2d 724 (1991); *Hudson, supra.* Moreover, certifying this case as a class action is fair to both sides. By bifurcating the proceeding, Mega will be able to pursue its individual defenses, such as the defense that the Jacolas did not read their policy until after they filed this action, during the second phase of the trial. *Hudson, supra.* We also find that class certification is also fair to the plaintiffs because it is more economical to pursue the action as a class instead of individually. *Summons, supra; Lemarco, supra.* Thus, we also conclude that the superiority requirement has been satisfied.

### E. *Typicality*

The next requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Ark. R. Civ. P. 23(a)(3). In *Direct General Insurance Co. v. Lane,* 328 Ark. 476, 944 S.W.2d 528 (1997), we recently explained that the typicality requirement is satisfied if the representative's claim arises from the same wrong allegedly committed against the members of the class. We have also adopted the following explanation of the typicality requirement taken from Newberg's treatise on class actions:

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises *from the same event or practice or course of conduct* that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met *irrespective of varying fact patterns which underlie individual claims.*

*Id.,* (citing HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 3.13, at pp. 166-67 (2d ed. 1985)) (emphasis added). Thus, when analyzing this factor, we focus upon the defendant's

conduct and not the injuries or damages suffered by the plaintiffs. *Direct Gen., supra; Cheqnet, supra; Summons, supra.*

██ In this case, the common issues are whether Alliance is a true group master policyholder, whether Mega issued group or individual policies, and whether Mega complied with the statutory and regulatory notice requirements. Each of these claims arise from Mega's common course of selling an alleged group policy through Alliance. Because each of these common claims arose from the same wrong allegedly committed by Mega, we find no abuse in the trial court's determination that the Jacolas' claim is typical of the claims presented in the class action.

## F. Adequacy

██ The last element is whether the Jacolas "will fairly and adequately protect the interests of the class." Ark. R. Civ. P. 23(a)(4). We have previously explained that the three elements of this requirement are that:

> (1) the representative counsel must be qualified, experienced and generally able to conduct the litigation; (2) that there be no evidence of collusion or conflicting interest between the representative and the class; and (3) the representative must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation.

*Direct Gen., supra; First Nat'l, supra.*

██ In their complaint and request for certification, the Jacolas stated that their attorney, John Doyle Nalley, would fairly and competently represent the class. Absent a showing to the contrary, we may presume that the representative's attorney will vigorously and competently pursue the litigation. HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, §§ 3.24, 3.42 (3d. ed. 1992). Additionally, there is no evidence that the Jacolas have a conflict of interest with the class members. Thus, we hold that the first and second elements of the adequacy requirement have been established.

 Finally, in order to establish adequacy, the representative must show some minimal interest in the case. We have held that this element of adequacy is satisfied if the representative displays a minimal level of interest in the action, a familiarity with the challenged practices, and the ability to assist in litigation decisions. *Direct Gen., supra; Cheqnet, supra; Union Nat'l Bank v. Barnhart,* 308 Ark. 190, 823 S.W.2d 878 (1992). During the hearing, Mike Jacola testified that he had read the complaint and understood the allegations against Mega. Jacola further testified that he had stayed in touch with his lawyer since the lawsuit was filed, that he understood his duties as class representative, and that he was willing to comply with those duties. Therefore, we conclude that the trial court did not err when it held that the Jacolas had fulfilled the adequacy requirement.

 In response, Mega asserts that the Jacolas are inadequate representatives because their claim will ultimately fail due to the fact that they did not read their policy. This argument, however, ignores the Jacolas' underlying claim on behalf of the class that the policies are void. Furthermore, Mega's argument addresses the merits of the underlying case, and thus we will not consider it when determining whether the requirements of Rule 23 have been satisfied. *Direct Gen., supra; Farm Bureau, supra; First Nat'l, supra.* Thus, we also find no error in the trial court's determination that the adequacy requirement had been satisfied.

For these reasons, we conclude that the trial court did not abuse its discretion when it held that class certication was proper under Rule 23. Accordingly, we affirm.

Affirmed.

THORNTON, J., dissents

RAY THORNTON, Justice, dissenting. In order to obtain certification by the trial court for a class action, the Jacola family as plaintiffs have the burden of showing that the requirements for class certification have been met. The Jacolas have not met that burden in this case. I do not find that either the trial court's order or the record reflects the type of rigorous analysis that I believe is required under Rule 23 to determine the reasons why the com-

mon questions predominate over the individual questions and why a class action is superior to other methods of trying the issues. *Arthur v. Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.2d 1227 (9th Cir. 1996).

Rule 23 of the Arkansas Rules of Civil Procedure provides for class certification when:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Ark. R. Civ. P. 23(a). Additionally, the rule provides that a class action may be maintained if the court

> finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Ark. R. Civ. P. 23(b).

In the case before us, the trial court did not make the determination required by the rule as to predominance, or as to the superiority of a class action for a fair and efficient adjudication of the controversy. It seems to me that it is necessary that this matter be remanded to the trial court for consideration of these two criteria.

### Predominance

We have held that it is not necessary that the questions of law and fact be identical, but that it is enough to show that a common question of law or fact *predominates* over other questions affecting individual members. *Arkansas Louisiana Gas Co. v. Morris*, 294 Ark. 496, 744 S.W.2d 709 (1988); *see also Security Benefit Life Ins. Co. v. Graham*, 306 Ark. 39, 810 S.W.2d 943 (1991) and *International Union of Elec., Radio & Mach. Workers v. Hudson*, 295 Ark. 107, 747 S.W.2d 709 (1988) (emphasizing the requirement that the questions of law or fact be *predominant* in order to meet the criteria of this rule). With regard to Rule 23 motions, we have

specifically stated that we will follow the federal rules in class actions. *Farm Bureau Mut. Ins. v. Farm Bureau Policy Holders*, 323 Ark. 706, 918 S.W.2d 129 (1996). The Supreme Court, in interpreting Rule 23, has said that a class action "may only be certified if the trial court is satisfied *after a rigorous analysis*, that the prerequisites of Rule 23 have been satisfied." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982) (emphasis supplied); *see also Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996). In the recent case of *Anchem Products, Inc. v. Windsor*, 117 S. Ct. 2231 (1997), the Supreme Court affirmed a reversal by the Third Circuit Court of Appeals of a district court's class certification, based in part upon a failure to show predominance as required by Rule 23. The Supreme Court stated:

> We address first the requirement of Rule 23(b)(3) that "[common] questions of law or fact . . . predominate over any questions affecting only individual members." The District Court concluded that predominance was satisfied based on two factors: class members' shared experience of asbestos exposure and their common "interest in receiving prompt and fair compensation for their claims, while minimizing the risks and transaction costs inherent in the asbestos litigation process as it occurs presently in the tort system."
>
> . . .
>
> The predominance requirement stated in Rule 23(b)(3), we hold, is not met by the factors on which the District Court relied. The benefits asbestos-exposed persons might gain from the establishment of a grand-scale compensation scheme is a matter fit for legislative consideration, *see supra*, at 2237-2238, but it is not pertinent to the predominance inquiry. *That inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.*
>
> . . .
>
> *The Rule 23(b)3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. See* 7A Wright, Miller, & Kane 518-159.

*Id.* at 2249 (footnotes omitted) (emphasis supplied).

At issue in this case is the plaintiffs' reliance upon representations by Mega. The fact that each individual's reliance on Mega's representations, as well as the uniformity of the representations, will be questioned, further underscores the importance of rigorously analyzing whether the common issues predominate. As pointed out by the Fifth Circuit in *Simon v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880 (5th. Cir. 1973):

> If there is any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment in a class action. Thus, courts usually hold that an action based substantially, as here, on oral rather than written misrepresentations cannot be maintained as a class action. *Similarly, if the writings contain material variations, emanate from several sources, or do not actually reach [certain class members], they are no more valid a basis for a class action than dissimilar oral representations.*

*Id.* (citations omitted) (emphasis supplied). In *Arthur v. Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995), when reversing a class certification of a medical malpractice case that involved a question of informed consent, we found that the issues regarding what was said to each patient, the emotional condition of the patient, and each patient's understanding would make the individual questions predominant. Quoting *Brown v. Regents of University of California*, 151 Cal. App. 3d. 982, 198 Cal. Rptr. 916 (3d Dist. 1984), we noted that where close scrutiny is required as to what representations are made to each plaintiff, it cannot be said that the common issues predominate.

Conversely, in *Lemarco, Inc. v. Wood*, 305 Ark. 1, 804 S.W.2d 724 (1991), a suit by members of a buyers' club against the club, the record shows that there was testimony that salesmen were trained by video tape, that they were instructed what to say and how to make the sales presentations, and that the presentations were virtually the same for each customer. Further, the mail solicitation and retail sales were the same for each member of the class. We relied upon these facts in upholding the trial court's order of class certification. As this is an action involving questions of misrepresentation and reliance, I do not believe we should affirm without such a showing in this case.

*Superiority*

Rule 23(b) also requires the court to find "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining the answer to this inquiry, the court must first consider what other procedures, if any, exist for disposing of the dispute before it. 17A CHARLES ALAN WRIGHT *ET AL,* FEDERAL PRACTICE AND PROCEDURE § 1779, at 551 (2d ed. 1986). It must then compare possible alternatives to determine "whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." *Id.* No such determination was made by the trial court here. I would remand with directions to make the required determinations under Rule 23. I respectfully dissent.