ADVANCE AMERICA, CASH ADVANCE CENTERS of
ARKANSAS, INC. *v.* Phyllis GARRETT,
Individually and o/b/o
a Class of Similarly Situated Persons

00-1287                                    40 S.W.3d 239

Supreme Court of Arkansas
Opinion delivered March 8, 2001

*Bowman and Brooke LLP*, by: *Robert M. Buell* and *Charles K. Seyfarth*; and *Wright, Lindsey & Jennings, LLP*, by: *Claire Shows Hancock* and *David M. Powell*, for appellant.

*Morgan & Turner*, by: *Todd Turner*, for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellant, Advance America, Cash Advance Centers of Arkansas, Inc., brings this interlocutory appeal from the Clark County Circuit Court's order granting appellee Phyllis Garrett's motion to certify the case as a class action pursuant to Ark. R. Civ. P. 23 (2000). Our

jurisdiction is authorized by Ark. R. Sup. Ct. 1-2(a)(8) (2000) and Ark. R. App. P.—Civil 2(a)(9) (2000). In the instant appeal, Advance America challenges the portions of the trial court's order: (1) defining the class as "[a]ll persons, other than Advance America and its owners and agents, who have taken out loans from Advance America at its branch offices throughout the State of Arkansas and [sic] interest rates exceeding the maximum lawful rate set forth in Article 19, Section 13 of the Arkansas Constitution," and (2) naming Garrett the class representative. We find merit in appellant's argument that the trial court abused its discretion by reaching the merits of appellee's underlying claim. Accordingly, we reverse and remand the case to the trial court for further action consistent with this opinion.

## Background

Advance America is licensed by the State Board of Collection Agencies to engage in the check-cashing business in Arkansas pursuant to the Check-cashers Act, codified at Ark. Code Ann. sections 23-52-101 to -117 (Repl. 2000). On several instances, including June 28, 1999, Garrett visited an Advance-America branch in Arkadelphia and received cash advances in exchange for personal checks made out for the amount of the advance plus an additional amount to cover Advance America's fees. During each cash-advance transaction, Garrett also signed a document prepared by Advance America. Notably, the document Garrett signed at her June 28, 1999 transaction contained an arbitration clause, requiring that all disputes between the parties, except those within the jurisdiction of a small-claims tribunal, be resolved by binding arbitration under the Federal Arbitration Act. The document also stated that Garrett was prohibited from serving as a class representative or member in any dispute with Advance America.[1]

Over the few weeks following the June 1999 transaction, Garrett reported that she had difficulty repaying her cash advances to Advance America. For example, in May 1999, Garrett received $150.00 cash in exchange for a $195.00 personal check (including a $45.00 fee). Two weeks later, she returned to Advance America and

---

[1] In light of the parties' purported arbitration agreement, Advance America filed a motion to compel arbitration on March 21, 2000. The trial court's denial of that motion is the subject of a separate appeal pending before this court. See Advance America v. Garrett, No. 00-1080.

opted to extend her due date for an additional $45.00 fee. According to Garrett, she extended the due date at least two more times before satisfying the underlying $195.00 debt.

Ultimately, on October 12, 1999, Garrett filed a complaint against Advance America seeking usury damages for herself and other similarly situated persons. Garrett claimed that she paid Advance America over $300.00 in fees resulting in no reduction of her underlying cash advances. Moreover, she alleged that the transactions were actually loans with effective annual percentage rates ranging from 300% to 720%. On one occasion, she reported that she was charged fees resulting in an effective interest rate of 2,920%. Appellant acknowledged that it had more than 250 Arkansas customers and, as of February 15, 2000, had engaged in nearly 50,000 check-cashing transactions at twenty-seven Arkansas branches since June 1999.

On April 20, 2000, Garrett filed her motion for class certification. Following a hearing on July 31, 2000, the trial court denied appellant's pending motion to compel arbitration and granted Garrett's motion for class certification. In an August 9, 2000 order, the trial court issued the following findings of fact and conclusions of law concerning the class-certification motion: (1) appellant's cash-advance transactions with its customers were all conducted in the same manner and were virtually identical; (2) Garrett's transactions were similar to other customers' transactions; (3) some customers never signed an arbitration agreement; (4) the class of persons doing business with appellant was so numerous that joinder was impractical or impossible; (5) the issues raised by Garrett's complaint were common to other class members; (6) questions of fact common to the class predominated over any questions affecting individual class members; (7) a class action was the superior method to adjudicate the claims raised by Garrett, individually and on behalf of the other customers who received cash advances from Advance America; and (8) Garrett was an adequate person to serve as the class representative.

Significantly, the trial court also concluded that the documents underlying Advance America's cash-advance transactions were usurious on their face, void *ab initio*, and unenforceable. Further, the transactions were deemed "loans," and the fees charged by Advance America to its customers were deemed "interest." The court described the documents signed by Garrett and drafted by appellant as "adhesion contracts." Finally, the court concluded that Advance

America charged its customers "interest rates exceeding the maximum lawful rate set forth in Article 19, Section 13 of the Arkansas Constitution."

### Class certification

■ Advance America contends that the trial court erred by addressing the merits of Garrett's underlying claim of usury rather than resolving the strictly procedural question of the appropriateness of class certification. We agree. Ark. R. Civ. P. 23 (2000) provides that a trial court may certify a class only if the following conditions are met:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Ark. R. Civ. P. 23(a) (2000). Pursuant to subsection (b), the court must also find that:

> . . . the questions of law or fact common to the members of the class predominate over any questions affecting only individual members. and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Ark. R. Civ. P. 23(b) (2000).

■ ■ The question of whether class–action elements have been satisfied is a matter within the broad discretion of the trial court, and we will not reverse the trial court's decision absent an abuse of that discretion. *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997); *Direct Gen. Ins. Co. v. Lane*, 328 Ark. 476, 944 S.W.2d 528 (1997); *Farm Bureau Mutual Ins. Co. v. Farm Bureau Policy Holders & Members*, 323 Ark. 706, 918 S.W.2d 129 (1996); *Cheqnet Sys., Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995). However, the determination is purely a procedural question. *BNL Equity Corp. v. Pearson*, 340 Ark. 351, 356–57, 10 S.W.3d 838, 841 (2000). Neither the trial court nor the appellate court may delve into the merits of the underlying claim when deciding whether the requirements of Rule 23 have been met. *Id.*, see also *Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. 322, 335, 5 S.W.3d 423, 431 (1999) (holding that trial court may not

consider whether plaintiff will ultimately prevail); *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 267, 954 S.W.2d 898, 900 (1997).

In an illustrative case, we held that a trial court erred by delving into the merits of affirmative defenses at the class-certification stage. *Fraley*, 339 Ark. at 336, 5 S.W.3d at 432. In *Fraley*, we reasoned that the trial court prematurely adjudicated the validity of releases signed by putative class members and mistakenly delved into the merits of the appellee's affirmative defenses. *Id.* The same reasoning applies here, where the trial court improperly delved into the merits of Garrett's underlying usury claim and the validity of Advance America's defenses. The trial court's order went beyond determining whether Garrett satisfied class-action elements and concluded that the agreement signed by Garrett and drafted by Advance America was an adhesion contract, void *ab initio*, and that the cash-advance transactions were usurious in violation of the Arkansas Constitution.

The court's definition of the class also incorporated its judgment that the transactions were not merely cash advances but "loans" and that the fees charged by Advance America were "interest." As a result, the court implicitly and prematurely rejected appellant's argument that the Arkansas Check-cashers Act applied to the disputed transactions and expressly authorized collection of the challenged fees. *See* Ark. Code Ann. § 23-52-104(b) (Repl. 2000). Pursuant to Ark. Code Ann. section 23-52-104(b), check-cashing transactions covered by the Act are deemed *not* to be loans and fees collected are deemed *not* to be interest. In light of the foregoing, we hold that the trial court abused its discretion by reaching the merits of Garrett's underlying usury claim and prematurely rejecting appellant's arguments that the Check-cashers Act applied and that the parties' arbitration agreement was valid.

Given our holding that the trial court improperly delved into the underlying legal issues, we remand the case. Finality principles do not apply to class-certification rulings. *See Fraley*, 339 Ark. at 347-48, 5 S.W.3d at 438-39. Rather, a Rule 23 order may be altered or amended at any time prior to a decision on the merits. *Id.*; Ark. R. Civ. P. 23(b) (2000). Accordingly, we direct the trial court on remand to resolve the strictly procedural question of the appropriateness of class certification.

GLAZE, J., not participating.