TAY-TAY, INC., Arkansas Payday Check Cashers, Inc., Two Cluck, Inc. d/b/a Payday Advance, and Jim Mead *v.* Brandon YOUNG, Jimmie Sue Spencer, and Karla Blackford

01-1377                                                80 S.W.3d 365

Supreme Court of Arkansas
Opinion delivered July 5, 2002

*Mixon, Parker, & Hurst, PLC*, by: *Donald L. Parker, II* and *Harry S. Hurst, Jr.*; *Wright, Lindsey & Jennings, LLP*, by: *Claire Shows Hancock*, for appellants.

*Orr, Scholtens, Willhite, & Averitt, PLC*, by: *Chris A. Averitt, Jay Scholtens*, and *Kevin J. Orr*; *Morgan & Turner*, by: *Todd Turner*, for appellees.

A NNABELLE CLINTON IMBER, Justice. Appellants, Tay-Tay, Inc., Arkansas Payday Check Cashers, Inc, Two Cluck, Inc. d/b/a Payday Advance, and Jim Mead (Jointly "Payday Advance"), appeal the Craighead County Circuit Court's certification of a class of plaintiffs, including appellee class representatives Brandon Young, Jimmie Sue Spencer, and Karla Blackford, in this class-action lawsuit. In a typical transaction, the customer would use the services of Payday Advance by presenting

a check to Payday Advance in the amount of $233.33, for which the customer received $200 in cash in return. The interest or fee of $33.33 allowed the customer to keep the $200 for two weeks, at which time he or she had to pay $233.33. The customer could then commence anew, again presenting a check for $233.33, which Payday Advance again would agree to hold for two weeks. In March 2001, Payday Advance changed its terms and agreed to give the customer $200 in exchange for a $216 check that could be bought back in two weeks for $216 cash plus an "insufficient funds" charge of $25. As such, the customer, under the new transaction, gave Payday Advance a total of $241.00 in return for an advance of $200.

The class representatives filed a class-action lawsuit against Payday Advance alleging that the deferred presentment was, in fact, a loan with interest rates ranging from 300 percent to over 700 percent per annum and that the transaction violated the usury laws as provided in Article 19, Section 13 of the Arkansas Constitution and the Arkansas Deceptive Trade Practices Act, codified at Ark. Code Ann. §§ 4-88-201, *et seq.* (Repl. 2001). On March 16, 2001, Payday Advance filed a motion to compel arbitration and stay proceedings based upon a compulsory arbitration clause in the Deferred Presentment Agreement. The class representatives responded arguing that the agreement was void and that the arbitration clause was unenforceable on the grounds of lack of mutuality, as well as void and unconscionable. The trial court agreed with the appellees, and Payday Advance appealed that decision. The trial court's order finding the arbitration clause unenforceable was affirmed by this court in *Tay-Tay, Inc. v. Young*, 349 Ark. 369, 78 S.W.3d 721 (2002) ("Payday Advance I").

On January 26, 2001, the class representatives filed a motion for class certification. Payday Advance responded on February 7, 2001, arguing that the appellees failed to satisfy the requirements of Ark. R. Civ. P. 23 to certify a class action. Following a hearing on the motion, the trial court issued its order certifying the class on August 17, 2001. Payday Advance then filed its appeal on September 17, 2001.

■ ■ The question of whether the requirements for a class action under Ark. R. Civ. P. 23(a) and (b) have been satisfied is a matter within the broad discretion of the trial court, and we will not reverse the trial court's decision absent an abuse of that discretion. *Advance America v. Garrett*, 344 Ark. 75, 40 S.W.3d 239 (2001); *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997); *Direct Gen. Ins. Co. v. Lane*, 328 Ark. 476, 944 S.W.2d 528 (1997); *Farm Bureau Mutual Ins. Co. v. Farm Bureau Policy Holders & Members*, 323 Ark. 706, 918 S.W.2d 129 (1996); *Cheqnet Sys., Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995). However, the determination is purely a procedural question. *BNL Equity Corp. v. Pearson*, 340 Ark. 351, 10 S.W.3d 838 (2000). Neither the trial court nor the appellate court may delve into the merits of the underlying claim when deciding whether the requirements of Rule 23 have been met. *Id.; Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. 322, 5 S.W.3d 423 (1999) (holding that trial court may not consider whether plaintiff will ultimately prevail); *Mega Life & Health Ins. Co. v. Jacola, supra.*

## I. Sufficiency of Trial Court's Order

As an initial matter, Payday Advance asserts that the trial court "failed to undertake the required rigorous analysis" in considering the class-certification request, and that the court merely repeated the requirements in Rule 23 without discussion or analysis. Payday Advance argues that the United States Supreme Court requires a "rigorous analysis" to ensure that all requirements of Rule 23 have been met. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). Payday Advance's argument, however, is without merit for two reasons.

■ First, Payday Advance's argument that the trial court's order lacks specific findings is not preserved for appeal. As we noted in *Mega Life*,

> [t]his issue is governed by Ark. R. Civ. P. 52(a) which states that "findings of fact and conclusions of law are unnecessary on decisions of motions under these Rules," but that the court shall enter such specific findings and conclusions upon the request of a party. It does not appear from the abstract that Mega

ever requested that the court make such specific findings in regard to the predominance and superiority requirements of Rule 23(b).

Moreover, Rule 52(b) states that upon a motion of a party made no later than ten days after the entry of judgment, the court may amend its findings of fact or make additional findings. Thus, Mega had ten days after the order of certification was entered to ask the trial court to make additional findings regarding the Rule 23(b) elements. Mega, however, failed to make such a request. Because Mega failed to request specific findings in regard to the Rule 23(b) elements either prior to or after the entry of the order of certification, we hold that it has waived this issue on appeal. *See Smith v. Quality Ford, Inc.*, 324 Ark. 272, 920 S.W.2d 497 (1996); *Brown v. Seeco, Inc.*, 316 Ark. 336, 871 S.W.2d 580 (1994).

*Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 267-68, 954 S.W.2d 898, 900 (1997). In this case, as in *Mega Life*, Payday Advance failed to request specific findings of fact on the Rule 23 elements; nor did it file a motion pursuant to Rule 52(b) after entry of the judgment asking the trial court to make additional findings. Thus, Payday Advance has waived this issue on appeal.

██ ██ Second, we do not require that the trial court conduct a "rigorous analysis" under Rule 23 as Payday Advance asserts. Again, this issue was addressed in *Mega Life*:

> We also must respond to the dissent's contention that the certification order must be reversed because the trial court failed to conduct a "rigorous analysis" of the Rule 23(b) requirements of predominance and superiority. In support of this argument, the dissent cites *Arthur v. Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995). The *Arthur* opinion, however, is devoid of any language requiring the trial court to conduct a "rigorous analysis." In fact, we are unable to find any Arkansas case requiring the trial court to conduct a rigorous analysis, or for that matter, any case that describes exactly what such an analysis entails. Instead, we have consistently held that we will reverse a trial court's certification order *only* when the court has abused its discretion. *Direct Gen. Ins. Co. v. Lane*, 328 Ark. 476, 944 S.W.2d 528 (1997); *Farm Bureau Mutual Ins. Co. v. Farm Bureau Policy Holders*, 323 Ark. 706, 918 S.W.2d 129 (1996). In making this determination, we have consistently reviewed the evidence in the record to deter-

mine whether it supports the trial court's ultimate conclusion regarding certification. *See, e.g., Direct Gen., supra; Arthur, supra.* We have not, as argued by the dissent, previously required the court to enter into the record a detailed explanation of why it concluded that certification was proper, and we refuse to impose such a requirement upon the trial court at this time.

*Mega Life & Health Ins. Co. v. Jacola,* 330 Ark. at 269, 954 S.W.2d at 901. The trial court's order in this case is therefore adequate because "[i]mplicit in the trial court's order granting class certification is the court's ultimate conclusion that all six elements of class certification have been satisfied." *Id.* at 268, 954 S.W.2d at 900. While Payday Advance waived its right to get specific findings on the issue, it has not "waived its right to contest the trial court's *ultimate* conclusion that all six elements have been satisfied as required by Ark. R. Civ. P. 23." *Id.* at 268, 954 S.W.2d at 901 (emphasis in original).

## II. Rule 23

■ Rule 23 of the Arkansas Rules of Civil Procedure provides that a trial court may certify a class only if the following conditions are met:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Ark. R. Civ. P. 23(a) (2002). Pursuant to subsection (b), the court must also find that:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Ark. R. Civ. P. 23(b) (2002). In this appeal, Payday Advance challenges the elements of adequacy of the class representative and typicality under Rule 23(a) and the elements of predominance and superiority under Rule 23(b).

## A.  Rule 23(a) — Adequacy of Class Representatives

■ ■     The first of these challenges by Payday Advance involves the issue of the adequacy of the class representatives under Rule 23(a)(4).  This court has previously interpreted Rule 23(a)(4) to require three elements:

> (1) the representative counsel must be qualified, experienced and generally able to conduct the litigation; (2) there be no evidence of collusion or conflicting interest between the representative and the class; and (3) the representative must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation.

*BPS Inc. v. Richardson*, 341 Ark. 834, 844, 20 S.W.3d 403, 407–08 (2000).  Payday Advance directs its focus on the adequacy of the class representatives and not the adequacy of the class counsel. This court has noted that the "adequacy of representation" element is satisfied if the representatives display a minimal level of interest in the action, familiarity with the challenged practices, and ability to assist in litigation decisions.  *Id.*  In addition, a trial court may also consider it necessary, in its analysis of this requirement for class certification, to resolve any questions of reluctancy on the part of named class representatives to comply with requirements of disclosure or participation in discovery requests during the pendency of the litigation.  *Id.*

■     Payday Advance contends that none of the named class representatives can represent claims against Two Cluck, Inc. and Mr. Mead because the record does not reflect that any of the class members did business with either Two Cluck or Mr. Mead. However, Mr. Mead owns all the companies named as defendants and Two Cluck did business as Payday Advance.  The resolution of the issue of Two Cluck's and Mr. Mead's involvement in the case would require this court to analyze the merits of the case.  As noted above, we will not delve into the merits of the underlying case on appeal when considering the propriety of certification of class.  Furthermore, the appellees have not yet been allowed to conduct discovery on the merits.

### 1. Class Representative Jimmie Sue Spencer

Payday Advance alleges that Ms. Spencer is unable to adequately and fairly represent the class because she is involved in other class action suits against other check cashers, and she has inadequate knowledge of the case. In her deposition, Ms. Spencer stated that she did business with Payday Advance and that the class action suits were based on the fact that the companies "charge too much interest for the service that they are providing." She stated her goal as a class representative: "My goal is, I think that personally if they are going to offer this service, they should do it at a more reasonable, they should not be allowed to charge that much interest because most people aren't aware of it. . . . I would like for people not, common people, just working every day, working class people, who live from pay check to pay check, not to be taken advantage of because they can do it." She speaks with the attorneys once or twice a week. She said that she will be able to take time off from work as needed, that her attorneys had explained the duties of a class representative, and that she understood them. The trial court did not err in ruling that Ms. Spencer could adequately and fairly represent the class.

### 2. Class Representative Karla Blackford

Payday Advance claims that Ms. Blackford lacks the knowledge to adequately represent the class and that she was less than truthful when she first said she had not done business with other check cashing companies. In her deposition, Ms. Blackford stated that she had done business with other check cashing companies even though she had earlier stated that she had only used Payday Advance; however, she believed they were all the same company just using different names. She understands the nature of the case as "these loans were illegal, based on the amount of interest that they were charging . . . ." She stated her goal as "[j]ust to see that it be put in, that a law be passed or some kind of legislation be passed that the interest be charged at a legal rate, that it not be such a high loan, an interest loan, that you cannot pay it." She speaks with the attorneys "four, five times in a two to three week period." She said she was willing to attend the trial, if necessary.

Based on the foregoing, Ms. Blackford demonstrates an interest in the proceedings, a general understanding of the proceedings, and a willingness to assist in the litigation. Her confusion as to the identity of the various check cashers does not disqualify her. The trial court did not err in ruling that Ms. Blackford could adequately and fairly represent the class.

### 3.   Class Representative Brandon Young

As with Ms. Spencer, Payday Advance contends that Mr. Young cannot represent the class because he is involved in other check cashing cases and does not have adequate knowledge. Payday Advance also claims that Mr. Young is untruthful. In his deposition, Mr. Young explained that he used the check cashing services of Payday Advance and that "I believe that the interest rates or fees as you call it are too high as for the money that we're paying, or getting loans from . . . ." He speaks with the attorneys about once per week. He understands his responsibilities as a representative to be willing to go to court. "I would also not look out for just myself, but as the whole class, as a group, and be willing to testify for the group."

As to Mr. Young's veracity, in his affidavit, he stated that "[w]hen I returned to the Payday Advance office on June 26, 2000, I was told I could pay off the check or pay an additional Thirty Three Dollars and Thirty Three Cents ($33.33) cash to renew the loan." He admits that his description was not completely accurate. In actuality, he had to give Payday Advance $233.33 in cash; then, he could give them another check for $233.33; they would give him another $200 and defer presentment of the new check for two weeks. This confusion does not prevent him from adequately representing the class. ·

The trial court did not err in ruling that the named representatives meet the minimal bar set by the third requirement derived from Rule 23(a)(4), as noted in *BPS, Inc., supra,* and in *USA Check Cashers of Little Rock, Inc. v. Island,* 349 Ark. 71, 76 S.W.3d 243 (2002). Therefore, we affirm the trial court's decision that the named class members adequately and fairly represent the class.

## B. Rule 23(a) — Typicality

In its next challenge under Rule 23(a), Payday Advance asserts that the class representatives' claims are not typical of the claims of the class because they signed an arbitration agreement requiring them to settle disputes by arbitration and prohibiting them from acting as a class representative in a class action against Payday Advance. This argument is without merit because we affirmed the trial court's determination that the arbitration agreement is unenforceable. *See Payday Advance I, supra.* Furthermore, the named representatives' claims are typical, if not identical, to the claims of each class member. Basically, each class member is asserting a claim of usury dependent on this court resolving the questions of whether these transactions are "loans" with "interest" and, if so, whether the interest charged is usurious. We stated in *USA Check Cashers*:

> Class members, of course, may opt out of the class if they are not satisfied with the complaint or remedies asserted. *See, e.g., Luebbers v. Advance Am. Cash Advance Ctrs. of Arkansas, Inc.,* 348 Ark. 567, 74 S.W.3d 608 (2002); *Haberman v. Lisle,* 317 Ark. 600, 884 S.W.2d 262 (1994). Although we held in *BPS Inc. v. Richardson, supra,* that class certification is not appropriate when a putative class representative is subject to unique defenses that threaten to become the focus of the litigation, that is not the case in the matter before us. The general defenses asserted against Island and Carter such as estoppel, waiver, and statute of limitations may be just as applicable to other members of the class and may warrant the establishment of subclasses. They are not unique to the appellees.

*USA Check Cashers of Little Rock, Inc. v. Island,* 349 Ark. at 81. While this discussion in *USA Check Cashers* stemmed from the appellant's challenge to the appellees' adequacy as class representatives, the reasoning is equally applicable in a discussion on typicality of claims or defenses of the class. Each class member in this lawsuit will be asserting the same claim of usury. Payday Advance's defenses or claims against particular class members or subsets of class members does not defeat the initial usury inquiry. We, therefore, affirm the trial court's decision that the named representatives' claims are typical of the claims of the class.

## C. Rule 23(b) — Predominance and Superiority

In its final point, Payday Advance argues that the named representatives failed to satisfy the requirements of Rule 23(b) that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Specifically, Payday Advance argues that the trial court will "be faced with literally hundreds of individual questions of fact" if the class is certified, and resolving these questions will overwhelm the trial court and predominate over the one question common to all class members — whether the fees charged are interest under Arkansas law. The class representatives respond that this one question is the reason the case is proper for class certification in that whether these fees constitute interest affects every class member because the fees would be usurious by law. This court has already addressed the issues of superiority and predominance in a check-cashing case in *USA Check Cashers*, *supra*, and our holding in that case applies here. With regard to the superiority requirement, we stated in *USA Check Cashers*:

> This court has held with respect to superiority that the requirement is satisfied if class certification is the more "efficient" way of handling the case and if it is fair to both sides. *See BPS, Inc. v. Richardson, supra.* Real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. *See SEECO, Inc. v. Hales, supra; Lemarco, Inc. v. Wood,* 305 Ark. 1, 804 S.W.2d 724 (1991).
>
> Here, the circuit court ruled that because the potential recovery to each member of the class was expected to be relatively small and would not justify contingency fee cases nor cases in which attorneys charge on an hourly basis, a class action was the superior method for adjudicating these claims. The overarching issue in this case concerns USA Check Cashers' uniform practice of requiring a fee in exchange for an agreement to defer presentment of the customer's check for payment and whether that fee is usurious interest. Because of the pervasiveness of this issue in the transactions of all potential class members, it would be economically and judicially inefficient to require all putative

class member, of which there could be as many as 2,680, to file individual suits in a small claims court.

To be sure, USA Check Cashers may have defenses available to it as to various individual members or even subclasses, but this is no reason to deny certification. To the contrary, this court has held that the class-action procedure is judicially efficient in resolving not only common claims but also common defenses. *See, e.g., SEECO, Inc. v. Hales, supra; Mega Life & Health Ins. Co. v. Jacola, supra.* The Proposed Trial Management Plan submitted to the court by Island and Carter certainly contemplates resolving common defenses in Phase I, as evidenced by the language of the proposal: "The Court may also determine in Phase I of the trial any common defenses asserted by the defendant, *e.g.*, whether class members who entered into a transaction after the filing of this lawsuit are estopped from asserting a claim." Finally, as to manageability, this court has made it abundantly clear that a circuit court can always decertify a class should the action become too unwieldy. *See BNL Equity Corp. v. Pearson, supra; Fraley v. Williams Ford Tractor & Equip. Co., supra.*

We conclude that a class action is the superior method for adjudicating the class members' claims.

*USA Check Cashers of Little Rock, Inc. v. Island,* 349 Ark. at 82–83. The court went on to address the issue of predominance, stating:

> For its final point, USA Check Cashers argues that the claims of individual claimants depend on each claimant's particular interaction with the company. Additionally, the company asserts that because individual defenses would become the focus of the litigation, class certification is inappropriate.
>
> We have already addressed this point in large part. USA Check Cashers appears to be challenging the predominance requirement, and the starting point for our analysis is whether a common wrong has been alleged against USA Check Cashers respecting all class members. *See BPS, Inc. v. Richardson, supra.* Again, as already underscored in this opinion, there are overarching common questions present in this case as the circuit court outlined in its order. Those questions include: whether USA Check Cashers' transactions were loans with interest accruing and whether those transactions violated the Arkansas Constitution. We conclude that these common questions predominate over individual questions. The mere fact that individual issues and defenses may be raised by the company regarding the recov-

ery of individual members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing which must be resolved for all class members. *Newberg on Class Actions* speaks directly to this point:

> Challenges based on the statutes of limitations, fraudulent concealment, releases, causation, or reliance have usually been rejected and will not bar predominance satisfaction because these issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability.

*SEECO, Inc. v. Hales*, 330 Ark. at 413, 954 S.W.2d at 240 (quoting 1 Herbert B. Newberg, *Newberg on Class Actions* § 4.26, at 4-104 (3d ed. 1992)).

Again, common issues, as far as alleged wrongdoing and defenses, predominate in this case, and we affirm the trial court on this point.

*USA Check Cashers of Little Rock, Inc. v. Island*, 349 Ark. at 83-84. Clearly, this court has already addressed the issues of superiority and predominance in a check-cashing case, and Payday Advance raises no new issues for consideration; nor does it raise any new arguments as to why these elements cannot be met here. As such, the reasoning this court employed in *USA Check Cashers, supra,* addressing the provisions of Rule 23(b) applies equally to this case. Accordingly, we affirm the trial court on this point as well.

Affirmed.

GLAZE, J., not participating.