USA CHECK CASHERS OF LITTLE ROCK, INC. *v.*
Carolyn ISLAND and Jeanette Carter, Individually and
*o/b/o* A Class of Similarly Situated Persons

01-1294                                    76 S.W.3d 243

Supreme Court of Arkansas
Opinion delivered May 30, 2002

*Eubanks Welch Baker & Schulze*, by: *J. G. "Gerry" Schulze* and *Lloyd W. "Tré" Kitchens*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *R. Christopher Lawson*; and *Morgan & Turner*, by: *Todd Turner*, for appellees.

ROBERT L. BROWN, Justice. This is a class–certification appeal. The circuit court granted the appellees' motion for class certification, and the appellant, USA Check Cashers of Little Rock, Inc., now contends that the circuit court abused its discretion in certifying this class. We affirm the class certification.

On January 4, 2000, the initial class–action complaint was filed in this matter. On January 30, 2001, a motion for class certification was filed by the proposed class representative. In that motion, the class representative moved for certification of a class of persons who had been charged interest by USA Check Cashers that exceeded the maximum lawful amount set forth in Article 19, § 13, of the Arkansas Constitution. The motion alleged that the class had satisfied the criteria of Arkansas Rule of Civil Procedure

23(a) and (b) for class certification, including numerosity, commonality, typicality, and adequacy of representation. The motion further asserted that class counsel would fairly and competently represent the interests of the class, that common questions of law and fact predominated in the action, and that a class action was the superior method for adjudication of the claims. Attached to the motion were several exhibits including affidavits from USA Check Cashers' customers, including appellees Carolyn Island and Jeanette Carter, and USA Check Cashers' responses to interrogatories which revealed that there were approximately 2,680 customers who had received the described cash advances.

On April 27, 2001, appellees Island and Carter, individually and on behalf of a class of similarly situated persons, filed a third amended complaint against USA Check Cashers.[1] In their complaint, Island and Carter described the action as a "class action brought on behalf of persons who have paid usurious rates of interest to USA for loans originating at USA's branch offices in central Arkansas." The complaint alleged that USA had offered cash advances to its customers in the form of "payday loans." It was further alleged that in those transactions, the customers would receive cash in exchange for personal checks drawn on the customer's bank account which were deferred for collection by USA.

The complaint also stated that the transactions were interest-bearing contracts in violation of the maximum lawful interest rate set forth in the Arkansas Constitution, Article 19, § 13. The complaint described the transactions as follows:

> 10. The total amount of the customer's personal check which is exchanged for cash is comprised of (a) the amount of each received by the customer, plus (b) a "charge" and/or "fee" for holding the check, i.e., deferring its presentment. The cash received by the customer constitutes the principal amount of the loan. The charge or fee paid by the customer to defer presentment of the check constitutes interest as that term is used in Arti-

---

[1] In the initial complaint, filed January 4, 2000, Cindy Brim served as the plaintiff. In the amended class action complaint, filed April 27, 2000, Roger Splettstoessa was named plaintiff. It is in the third amended complaint that Island and Carter were named as plaintiffs and proposed class representatives.

cle 19, § 13 of the Arkansas Constitution. USA agrees not to cash the customer's check for a specified period of time which constitutes the term of the loan. The term of the loan is tied to the customer's pay period at work. The customer is instructed to return to USA's place of business at the end of the loan term, *i.e.*, the customer's "payday," to redeem the loan and pick up the check in exchange for cash in the amount of the check. In the alternative, the customer is given the option of renewing the loan at the end of the loan term by paying an additional charge and presenting a new check for (a) the original amount of cash received by the customer, plus (b) an additional charge for the extended term.

In their prayer for relief, Island and Carter sought class–action certification. USA Check Cashers responded to the third amended complaint and denied the class claims as well as the class-action allegations. It further pled numerous affirmative defenses.

On June 4, 2001, Island and Carter filed a Proposed Trial Management Plan in which they proposed that liability be determined in Phase I of the trial; if liability is found, then aggregate monetary relief should be determined in Phase II of the trial; and distribution to individual class members in Phase III of the trial.

On July 31, 2001, the circuit court granted Island's and Carter's motion for class certification. In its order, the court found that having heard the arguments of counsel and having reviewed the pleadings and attachments, the proposed class representatives had satisfied each of the four requirements set out in Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. As to numerosity, the court found that since January 4, 1997, approximately 2,680 customers had engaged in transactions with USA Check Cashers. Hence, joinder of all members was impracticable. With respect to commonality, the court determined that there were eleven issues of law and fact common to the class:

A. Did the customer receive cash in exchange for a personal check drawn on the customer's bank account which was presented to and held by USA?

B. Was the face amount of the check greater than the amount of cash provided to the customer?

C. Did USA agree to hold the check until a date in the future when the customer was told to return to pay the full face amount of the check?

D. Does the difference between the face amount of the check and the amount of cash provided to the customer constitute the charging of interest for purposes of Article 19, § 13?

E. Was the customer given the option of paying the full face amount of the check or paying an additional charge to extend the time that USA would hold the check?

F. Does the charge paid to extend to the time that USA would hold the check constitute the charging of interest for purposes of Article 19, § 13?

G. What was the annual percentage rate for the interest charged to the customer?

H. Did the annual percentage rate charged to the customer exceed the maximum lawful rate set forth in Article 19, § 13?

I. What is the total amount of interest paid by the customer to USA?

J. Is the customer entitled to twice the amount of interest paid to USA?

K. A common defense is whether the fees paid by customers represent a lawful charge for processing the customer's check or the charge for a service other than the use of cash for a period of time.

The circuit court next stated that the proposed class representatives had engaged in transactions with USA Check Cashers which they were challenging and that their contention that the fees paid in exchange for deferred presentment of their checks was interest on usurious contracts was typical of the claims of the members of the class who engaged in the same transactions. As to defenses, the court ruled that USA Check Cashers' contention that the fees paid for the transactions did not constitute interest was a common defense to all claims as well. Finally, as to the adequacy of representation, the court found that Island and Carter

would fairly and adequately protect the interests of the class because they had the requisite intent to serve as class representatives, they were familiar with the practices challenged, and they were capable of assisting in litigation decisions.

The court also found that with respect to Ark. R. Civ. P. 23(b), the questions of law and fact common to the class members predominated over questions affecting only individual members and that a class action was the superior method of resolution. The court then defined the class as follows:

> All persons, other than USA Check Cashers, Inc., and its owners and agents, who have received cash advances from USA Check Cashers, Inc., or who have otherwise engaged in deferred deposit or deferred presentment transactions with USA Check Cashers, Inc., at its branch offices in the State of Arkansas from January 4, 1997 through March 1, 2001.

USA Check Cashers appeals from this order granting class certification.

## I.   Class Certification

### a.   Adequacy of Representation

USA Check Cashers first claims in its appeal that class certification was not proper in this case because the proposed class representatives, Island and Carter, are less effective as plaintiffs than other persons who might fall within the proposed class. Specifically, the company asserts that the appellees "sacrificed" a claim that the loans were consumer loans under Article 19, § 13(b), of the Arkansas Constitution, which would void the loans entirely. According to USA Check Cashers, this claim might be available to other members of the class but was not raised in the complaint filed by Island and Carter. USA Check Cashers submits that the willingness of the class representatives to sacrifice substantial rights of the class renders them inadequate as class representatives.

The company further maintains that Carter is subject to the affirmative defense of estoppel, and as such, she is subject to a defense that might not be pertinent to other class members. USA Check Cashers also contends that Carter may be subject to the

defense of waiver in that she purportedly signed an arbitration agreement in which she waived her right to file a lawsuit like the one at issue.

With regard to Island, USA Check Cashers urges that because she did not sign an arbitration agreement and has no knowledge of the arbitration or deferred-presentment agreements used, she too is prevented from being an adequate representative. In addition, the company argues that Island may be subject to the defense of statute of limitations on many of her claims, and that because she never signed the new contract issued by it following the passage of the Arkansas Check Cashers Act, Arkansas Code Annotated § 23-52-102 through 117 (Supp. 2001), she cannot adequately represent those persons who did.

We first note that neither the briefs filed by the parties in circuit court nor the hearing held before the court on the motion for class certification have been abstracted by USA Check Cashers. Because of this, we do not know precisely what was argued to the court regarding the adequacy of class representation. We do know, however, that the circuit court found Island and Carter to be adequate class representatives and that the court necessarily found against the company on all arguments raised as to adequacy. Accordingly, we will proceed to address the issue.

We note initially that this court reviews a trial court's grant of class certification under an abuse-of-discretion standard. *See Baker v. Wyeth-Ayerst Labs. Div.*, 338 Ark 242, 992 S.W.2d 797 (1999); *SEECO, Inc. v. Hales*, 330 Ark. 402, 954 S.W.2d 234 (1997). The six criteria for class certification are set out in Ark. R. Civ. P. 23(a) and (b): (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. USA Check Cashers first challenges the requirement of adequacy, which specifically states that the "representative parties will fairly and adequately protect the interests of the class." Ark. R. Civ. P. 23(a)(4). This court has previously interpreted Rule 23(a)(4) to require three elements:

> (1) the representative counsel must be qualified, experienced and generally able to conduct the litigation; (2) that there be no evidence of collusion or conflicting interest between the representa-

tive and the class; and (3) the representative must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation.

*Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 275, 954 S.W.2d 898, 904 (1997). *See also Direct Gen. Ins. Co. v. Lane*, 328 Ark. 476, 944 S.W.2d 528 (1997).

■ ■ There is little doubt that Island and Carter meet the first two standards for class representation. Island stated in her affidavit that she was very pleased with the representation of class counsel, that she felt "up to date" on the case and always had her questions answered. Counsel's competence was further asserted in the appellees' Motion for Class Certification. We have held that absent a showing to the contrary, we may presume that the representative's attorney will vigorously and competently pursue the litigation. *See Mega Life & Health Ins. Co. v. Jacola, supra* (citing Herbert B. Newberg, *Newberg on Class Actions* §§ 3.24, 3.42 (3d ed. 1992)). Furthermore, there has been no showing that either Island or Carter has engaged in collusion or has a conflict of interest with respect to other class members.

■ As to the third criterion set out in *Mega Life*, this court has held that the standard of adequacy is met if the representative displays a minimal level of interest in the action, familiarity with the challenged practices, and the ability to assist in litigation decisions. *See also Direct Gen. Ins. Co. v. Lane, supra*. In the case before us, the circuit court specifically found that Island and Carter had demonstrated in their affidavits and depositions that they possessed the requisite interest in the action to serve as class representatives. The court further found that they showed a familiarity with the practices challenged in the complaint and were capable of assisting in the litigation decisions. The court then concluded that both Carter and Island would fairly and adequately protect the interests of the class.

■ We disagree with USA Check Cashers that the affirmative defenses raised against Island and Carter and their failure to assert a "consumer loan" claim render them inadequate representatives. This court has been adamant in holding that an order

denying or granting class certification is separate from a judgment which delves into the merits of the case. *See, e.g., BPS, Inc. v. Richardson*, 341 Ark. 834, 20 S.W.3d 403 (2000); *BNL Equity Corp. v. Pearson*, 340 Ark. 351, 10 S.W.3d 838 (2000). Moreover, this court has repeatedly held that we will not look either to the merits of the class claims or to the appellant's defenses in determining the procedural issue of whether the Rule 23 factors are satisfied. *See, e.g., BNL Equity Corp. v. Pearson, supra; Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. 322, 5 S.W.3d 423 (1999); *Direct Gen. Ins. Co. v. Lane, supra*.

██ ██ Class members, of course, may opt out of the class if they are not satisfied with the complaint or remedies asserted. *See, e.g., Luebbers v. Advance Am. Cash Advance Ctrs. of Arkansas, Inc.*, 348 Ark. 567, 74 S.W.3d 608 (2002); *Haberman v. Lisle*, 317 Ark. 600, 884 S.W.2d 262 (1994). Although we held in *BPS, Inc. v. Richardson, supra*, that class certification is not appropriate when a putative class representative is subject to unique defenses that threaten to become the focus of the litigation, that is not the case in the matter before us. The general defenses asserted against Island and Carter such as estoppel, waiver, and statute of limitations may be just as applicable to other members of the class and may warrant the establishment of subclasses. They are not unique to the appellees. Moreover, the allegation that the third amended complaint does not specifically raise a consumer-loan claim under the Arkansas Constitution is not a basis for a finding of inadequacy. Several factors may have entered into the drafting of the complaint to which we are simply not privy.

We hold that the circuit court did not abuse its discretion on the adequacy-of-representation point.

*b. Superiority*

USA Check Cashers next argues that the fact that the claims of the putative class are small in amount is not enough to justify a class action. It further contends that there are several other avenues which the purported class members could take to resolve their differences with the company, including arbitration, small claims court, self-help, or individual actions in circuit court. The

company states, in addition, that the appellees have failed to submit a sufficient trial plan and, instead, have merely set forth an elementary three-phase plan. The company continues that because of the anticipated number of subclasses, the overall class will prove to be unmanageable. Furthermore, the company claims that a number of the issues relating to class members will have to be resolved on an individual basis.

This court has held with respect to superiority that the requirement is satisfied if class certification is the more "efficient" way of handling the case and if it is fair to both sides. *See BPS, Inc. v. Richardson, supra.* Real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. *See SEECO, Inc. v. Hales, supra; Lemarco, Inc. v. Wood,* 305 Ark. 1, 804 S.W.2d 724 (1991).

Here, the circuit court ruled that because the potential recovery to each member of the class was expected to be relatively small and would not justify contingency fee cases nor cases in which attorneys charge on an hourly basis, a class action was the superior method for adjudicating these claims. The overarching issue in this case concerns USA Check Cashers' uniform practice of requiring a fee in exchange for an agreement to defer presentment of the customer's check for payment and whether that fee is usurious interest. Because of the pervasiveness of this issue in the transactions of all potential class members, it would be economically and judicially inefficient to require all putative class members, of which there could be as many as 2,680, to file individual suits in a small-claims court.

To be sure, USA Check Cashers may have defenses available to it as to various individual members or even subclasses, but this is no reason to deny certification. To the contrary, this court has held that the class-action procedure is judicially efficient in resolving not only common claims but also common defenses. *See, e.g., SEECO, Inc. v. Hales, supra; Mega Life & Health Ins. Co. v. Jacola, supra.* The Proposed Trial Management Plan submitted to the court by Island and Carter certainly contemplates resolving common defenses in Phase I, as evidenced

by the language of the proposal: "The Court may also determine in Phase I of the trial any common defenses asserted by the defendant, *e.g.*, whether class members who entered into a transaction after the filing of this lawsuit are estopped from asserting a claim." Finally, as to manageability, this court has made it abundantly clear that a circuit court can always decertify a class should the action become too unwieldy. *See BNL Equity Corp. v. Pearson, supra; Fraley v. Williams Ford Tractor & Equip. Co., supra.*

■ We conclude that a class action is the superior method for adjudicating the class members' claims.

c. *Predominance*

For its final point, USA Check Cashers argues that the claims of individual claimants depend on each claimant's particular interaction with the company. Additionally, the company asserts that because individual defenses would become the focus of the litigation, class certification is inappropriate.

■ We have already addressed this point in large part. USA Check Cashers appears to be challenging the predominance requirement, and the starting point for our analysis is whether a common wrong has been alleged against USA Check Cashers respecting all class members. *See BPS, Inc. v. Richardson, supra.* Again, as already underscored in this opinion, there are overarching common questions present in this case as the circuit court outlined in its order. Those questions include: whether USA Check Cashers' transactions were loans with interest accruing and whether those transactions violated the Arkansas Constitution. We conclude that these common questions predominate over individual questions. The mere fact that individual issues and defenses may be raised by the company regarding the recovery of individual members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing which must be resolved for all class members. *Newberg on Class Actions* speaks directly to this point:

> Challenges based on the statutes of limitations, fraudulent concealment, releases, causation, or reliance have usually been rejected and will not bar predominance satisfaction because these

issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability.

*SEECO, Inc. v. Hales,* 330 Ark. at 413, 954 S.W.2d at 240 (quoting 1 Herbert B. Newberg, *Newberg on Class Actions* § 4.26, at 4-104 (3d ed. 1992)).

▮▮▮▮ Again, common issues, as far as alleged wrongdoing and defenses, predominate in this case, and we affirm the trial court on this point.

Affirmed.

GLAZE, J., not participating.