THE MONEY PLACE, LLC *v.* Dorothy BARNES

01-1374 78 S.W.3d 730

Supreme Court of Arkansas
Opinion delivered June 27, 2002

*Mixon, Parker, & Hurst, PLC*, by: *Donald L. Parker, II* and *Harry S. Hurst, Jr.*; *Wright, Lindsey & Jennings, LLP*, by: *Claire Shows Hancock*, for appellant.

*Orr, Scholtens, Willhite, & Averitt, PLC*, by: *Chris A. Averitt, Jay Scholtens*, and *Kevin J. Orr*; *Morgan & Turner*, by: *Todd Turner*, for appellee.

JIM HANNAH, Justice. Appellant The Money Place, LLC, appeals the Craighead County Circuit Court's certification of a class of plaintiffs, including Appellee Class Representative Dorothy Barnes, in this class-action lawsuit. In the fall of 2000, Barnes began using the services of The Money Place by presenting them a check in the amount of $344.44, for which she received $300 in cash in return. The interest or fee of $44.44 allowed her to keep the $300 for two weeks, at which time she had to pay $344.44. She then commenced anew, again presenting a check for $344.44, which they again agreed to hold for two weeks. Barnes continued to present new checks until January 2001. She alleges that the interest rate on the loans provided by The Money Place vary between 300 percent to 730 percent per annum.

On January 26, 2001, Barnes filed a class-action lawsuit against The Money Place alleging the loans by The Money Place violated the usury laws as provided in Article 19, Section 13 of the Arkansas Constitution and Ark. Code Ann. §§ 4-57-101—4-57-108 (Repl. 2001). On March 20, 2001, The Money Place filed a Motion to Compel Arbitration and Stay Proceedings based upon alleged valid and binding arbitration clauses in the Deferred Presentment Agreement. Barnes countered arguing that the agreement was void and that the arbitration clause was void and unconscionable. The trial court agreed with Barnes, and The Money Place appealed that decision. The trial court's order in that appeal was affirmed by the court in *The Money Place, LLC v. Dorothy Barnes, Individually and o/b/o a Class of Similarly Situated Persons*, 349 Ark. 411, 78 S.W.3d 714 (2002) ("The Money Place I").[1]

On February 1, 2001, Barnes filed a Motion for Class Certification. The Money Place responded on March 7, 2001, arguing that Barnes failed to satisfy the requirements of Ark. R. Civ. P. 23 to establish the necessity for handling this matter as a class action. A hearing was held on June 22, 2001, at which counsel presented arguments to the court. The parties agreed that copies of depositions, including Barnes's deposition, would be submitted in lieu of witness and party testimony at the hearing. Following the hearing, the trial court issued its order on August 17, 2001, certifying the class. The Money Place filed its appeal on September 17, 2001.

The question of whether the class-action elements in Ark. R. Civ. P. 23(a) and (b) have been satisfied is a matter within the broad discretion of the trial court, and we will not reverse the trial court's decision absent an abuse of that discretion. *Advance America v. Garrett*, 344 Ark. 75, 40 S.W.3d 239 (2001); *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997); *Direct Gen. Ins. Co. v. Lane*, 328 Ark. 476, 944 S.W.2d 528 (1997); *Farm Bureau Mutual Ins. Co. v. Farm Bureau Policy Holders & Members*, 323 Ark. 706, 918 S.W.2d 129 (1996);

---

[1] By motion granted January 10, 2001, the record in this appeal was consolidated with the record on appeal in 01-1361, *The Money Place I.*

*Cheqnet Sys., Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995). However, the determination is purely a procedural question. *BNL Equity Corp. v. Pearson*, 340 Ark. 351, 10 S.W.3d 838 (2000). Neither the trial court nor the appellate court may delve into the merits of the underlying claim when deciding whether the requirements of Rule 23 have been met. *Id.; see also Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. 322, 5 S.W.3d 423 (1999) (holding that trial court may not consider whether plaintiff will ultimately prevail); *Mega Life & Health Ins. Co., supra.*

## I. Sufficiency of Trial Court's Order

As an initial matter, The Money Place asserts that the trial court "failed to undertake the required rigorous analysis" in considering the class-certification request, and that the court merely repeated the requirements in Rule 23 without discussion or analysis. The Money Place argues that the United States Supreme Court requires a "rigorous analysis" to ensure that all requirements of Rule 23 have been met. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). The Money Place's argument, however, is without merit for two reasons.

First, The Money Place's argument that the trial court's order is not specific enough is not preserved for appeal. As we noted in *Mega Life*, 330 Ark. at 267;

> This issue is governed by Ark. R. Civ. P. 52(a) which states that "findings of fact and conclusions of law are unnecessary on decisions of motions under these Rules," but that the court shall enter such specific findings and conclusions upon the request of a party. It does not appear from the abstract that Mega ever requested that the court make such specific findings in regard to the predominance and superiority requirements of Rule 23(b).
>
> Moreover, Rule 52(b) states that upon a motion of a party made no later than ten days after the entry of judgment, the court may amend its findings of fact or make additional findings. Thus, Mega had ten days after the order of certification was entered to ask the trial court to make additional findings regarding the Rule 23(b) elements. Mega, however, failed to make such a request. Because Mega failed to request specific findings in regard to the Rule 23(b) elements either prior to or after the entry of the order of certification, we hold that it has waived this issue on appeal.

*See Smith v. Quality Ford, Inc.*, 324 Ark. 272, 920 S.W.2d 497 (1996); *Brown v. Seeco, Inc.*, 316 Ark. 336, 871 S.W.2d 580 (1994).

In this case, as in *Mega Life*, The Money Place neither requested specific findings of fact for the issues in Rule 23, nor did it file a motion pursuant to Rule 52(b) after the entry of the court's judgment to make additional findings on the issues. Therefore, this argument is waived on appeal.

█ █ Second, we do not require that the trial court conduct a "rigorous analysis" under Rule 23 as The Money Place asserts. Again, this issue was addressed in *Mega Life, supra*, in which this court stated:

> We also must respond to the dissent's contention that the certification order must be reversed because the trial court failed to conduct a "rigorous analysis" of the Rule 23(b) requirements of predominance and superiority. In support of this argument, the dissent cites *Arthur v. Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995). The *Arthur* opinion, however, is devoid of any language requiring the trial court to conduct a "rigorous analysis." In fact, we are unable to find any Arkansas case requiring the trial court to conduct a rigorous analysis, or for that matter, any case that describes exactly what such an analysis entails. Instead, we have consistently held that we will reverse a trial court's certification order only when the court has abused its discretion. *Direct Gen. Ins. Co. v. Lane*, 328 Ark. 476, 944 S.W.2d 528 (1997); *Farm Bureau Mutual Ins. Co. v. Farm Bureau Policy Holders*, 323 Ark. 706, 918 S.W.2d 129 (1996). In making this determination, we have consistently reviewed the evidence in the record to determine whether it supports the trial court's ultimate conclusion regarding certification. *See, e.g., Direct, supra; Arthur, supra*. We have not, as argued by the dissent, previously required the court to enter into the record a detailed explanation of why it concluded that certification was proper, and we refuse to impose such a requirement upon the trial court at this time.

*Mega Life*, 330 Ark. at 269. Therefore, the trial court's order is adequate because "[i]mplicit in the trial court's order granting class certification is the court's ultimate conclusion that all six elements of class certification have been satisfied," and that while The Money Place waived its right to get specific findings on the

issue, it has not "waived its right to contest the trial court's ultimate conclusion that all six elements have been satisfied as required by Ark. R. Civ. P. 23." *Mega Life*, 330 Ark. at 268.

## II. Rule 23

■ Ark. R. Civ. P. 23 (2001) provides that a trial court may certify a class only if the following conditions are met:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Ark. R. Civ. P. 23(a) (2001). Pursuant to subsection (b), the court must also find that:

> . . . the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Ark. R. Civ. P. 23(b) (2001). In this case, The Money Place challenges on appeal the elements of adequacy of the class representative and typicality under Rule 23(a) and the elements of predominance and superiority under Rule 23(b).

## A. Rule 23(a)

■ ■ As Barnes argues in her brief, The Money Place only challenges the issues of the adequacy of the class representative and typicality in Rule 23(a).[2] The first of these challenges addresses the issue of adequacy under Rule 23(a)(4), and this court has previously interpreted Rule 23(a)(4) to require three elements:

---

[2] Barnes asserts that The Money Place actually challenges three of the Rule 23(a) elements: adequacy of the class representative, typicality, and commonality. However, neither The Money Place's nor Barnes's brief discuss the element of commonality, nor has The Money Place challenged the elements of numerosity or adequacy of class counsel under Rule 23(a). As such, we will not address those elements here.

(1) the representative counsel must be qualified, experienced and generally able to conduct the litigation; (2) there be no evidence of collusion or conflicting interest between the representative and the class; and (3) the representative must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation.

*BPS Inc. v. Richardson*, 341 Ark. 834, 844, 20 S.W.3d 403 (2000). The Money Place directs its focus in this first issue on the adequacy of the class representative and does not address the adequacy of the class counsel. This court has noted that the "adequacy of representation" element is satisfied if the representatives display a minimal level of interest in the action, familiarity with the challenged practices, and ability to assist in litigation decisions. *Id.* In addition, a trial court may also consider it necessary, in its analysis of this requirement for class certification, to resolve any questions of reluctancy on the part of named class representatives to comply with requirements of disclosure or participation in discovery requests during the pendency of the litigation. *Id.*

In this case, Barnes testified in a deposition on May 15, 2001, regarding her involvement as the proposed class representative in this case and in a case with F&G Financial Services, another check-cashing business. The Money Place points out that Barnes, a pay-roll clerk by trade, could not remember all of the check-cashing businesses with whom she had done business and that she appeared to have difficulty initially understanding some of the legal terms associated with being the class representative in this case. However, Barnes's testimony indicated that she clearly understood the process and practice of the check-cashing system, she wanted to "represent all the other people who have been there, and to stop this usury on these loans," she spoke with her attorneys at least every two weeks, she read all documents that they sent to her, and she was able to take off work for whatever time necessary for the trials in these cases.

The trial court in its order certifying the class found that Barnes was an "adequate" person to serve as class representative, and we agree. Despite her lack of understanding of some legal terms involved in this case, Barnes clearly showed a minimal

level of interest in the action in that she contacted her attorneys to pursue a claim against The Money Place, gave her deposition, reads all pleadings sent to her by her attorneys, and stays in regular contact with her attorneys regarding the progress of this and her other cases. Barnes also was able to describe the check-cashing practices that gave rise to this action, and understood the cycle of payment of "fees" or "interest" at percentages beyond the usury rate. Finally, Barnes's ability to assist in the decision making as to the conduct of the litigation is highlighted by her testimony that she is willing to work with her attorneys to pursue all relief she and others may be due. She meets the minimal bar set by the third requirement derived from Rule 23(a)(4), as noted in *BPS, Inc., supra,* and in *USA Check Cashers of Little Rock, Inc. v. Island,* 349 Ark. 71, 76 S.W.3d 243 (2002).

 The Money Place also argues that Barnes cannot establish that there are no conflicting interests between her and other potential class members, referring to the second requirement derived from Rule 23(a)(4). The Money Place cites Barnes's inability to remember or keep straight all of the check-cashing businesses with whom she has done business, and argues that her involvement as class representative in at least two, if not more, cases will detract from her ability to represent each class adequately. However, again, Barnes testified that she is willing to take the time needed to represent the class in this and other cases, is familiar with the practices involved, and stays in contact with her attorneys. Furthermore, The Money Place's argument that the arbitration agreement signed by Barnes creates a conflict with potential class members who did not sign such an agreement is meritless now because we affirmed the trial court's determination that the agreement is unenforceable. *See, The Money Place I, supra.* Therefore, this conflict does not exist.

 In its second challenge under Rule 23(a), The Money Place asserts that Barnes's claims are not typical of the claims of the class because Barnes signed an arbitration agreement requiring her to settle her dispute by arbitration, and she also agreed that she would not act as a class representative in a class action against The Money Place. However, again, the arbitration agreement is unenforceable as we decided in the recent appeal on

that issue in this case. Furthermore, Barnes's claims are typical, if not identical except for the amount of damages, to the claims of each class member. Basically, each class member is asserting a claim of usury dependent on this court resolving the questions of whether these transactions are "loans" with "interest" and, if so, whether the interest charged is usurious. We stated in *USA Check Cashers*, *supra*:

> Class members, of course, may opt out of the class if they are not satisfied with the complaint or remedies asserted. *See, e.g., Luebbers v. Advance Am. Cash Advance Ctrs. of Arkansas, Inc.*, 348 Ark. 567, 74 S.W.3d 608 (2002); *Haberman v. Lisle*, 317 Ark. 600, 884 S.W.2d 262 (1994). Although we held in *BPS Inc. v. Richardson*, *supra*, that class certification is not appropriate when a putative class representative is subject to unique defenses that threaten to become the focus of the litigations, that is not the case in the matter before us. The general defenses asserted against Island and Carter such as estoppel, waiver, and statute of limitations may be just as applicable to other members of the class and may warrant the establishment of subclasses. They are not unique to the appellees.

*Id.*, 349 Ark. at 81. While this discussion in *USA Check Cashers* stemmed from the appellant's challenge to the appellees' adequacy as class representatives, the reasoning is equally applicable in a discussion on typicality of claims or defenses of the class. Each class member in this lawsuit will be asserting the same claim of usury against The Money Place. The Money Place's individual defenses or claims against particular class members or subsets of class members does not defeat the initial usury inquiry. Therefore, we affirm the trial court's decision that Barnes's claims are typical of the class's claims.

### B. Rule 23(b)

In its final point, The Money Place argues that Barnes failed to satisfy the requirements of Rule 23(b) that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Specifically, The Money

Place argues that the trial court will "be faced with literally hundreds of individual questions of fact" if the class is certified, and resolving these questions will overwhelm the trial court and predominate over the one question common to all class members — whether the fees charged are interest under Arkansas law. Barnes responds that this one question is the reason this case is proper for class certification in that whether these fees constitute interest affects every class member because the fees would be usurious by law.

This court has already addressed the issues of superiority and predominance in a check-cashing case in *USA Check Cashers, supra,* and our holding in that case applies here. With regard to superiority, this court stated in *USA Check Cashers*:

> This court has held with respect to superiority that the requirement is satisfied if class certification is the more "efficient" way of handling the case and if it is fair to both sides. *See BPS, Inc. v. Richardson, supra.* Real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. *See SEECO, Inc. v. Hales, supra; Lemarco, Inc. v. Wood,* 305 Ark. 1, 804 S.W.2d 724 (1991).
>
> Here, the circuit court ruled that because the potential recovery to each member of the class was expected to be relatively small and would not justify contingency fee cases nor cases in which attorneys charge on an hourly basis, a class action was the superior method for adjudicating these claims. The overarching issue in this case concerns USA Check Cashers' uniform practice of requiring a fee in exchange for an agreement to defer presentment of the customer's check for payment and whether that fee is usurious interest. Because of the pervasiveness of this issue in the transactions of all potential class members, it would be economically and judicially inefficient to require all putative class member, of which there could be as many as 2,680, to file individual suits in a small claims court.
>
> To be sure, USA Check Cashers may have defenses available to it as to various individual members or even subclasses, but this is no reason to deny certification. To the contrary, this court has held that the class-action procedure is judicially efficient in resolving not only common claims but also common defenses. *See, e.g., SEECO, Inc. v. Hales, supra; Mega Life & Health Ins. Co.*

*v. Jacola, supra.* The Proposed Trial Management Plan submitted to the court by Island and Carter certainly contemplates resolving common defenses in Phase I, as evidenced by the language of the proposal: "The Court may also determine in Phase I of the trial any common defenses asserted by the defendant, *e.g.*, whether class members who entered into a transaction after the filing of this lawsuit are estopped from asserting a claim." Finally, as to manageability, this court has made it abundantly clear that a circuit court can always decertify a class should the action become too unwieldy. *See BNL Equity Corp. v. Pearson, supra; Fraley v. Williams Ford Tractor & Equip. Co., supra.*

We conclude that a class action is the superior method for adjudicating the class members' claims.

*USA Check Cashers*, 349 Ark. at 82-83. The court went on to address the issue of predominance, stating:

For its final point, USA Check Cashers argues that the claims of individual claimants depend on each claimant's particular interaction with the company. Additionally, the company asserts that because individual defenses would become the focus of the litigation, class certification is inappropriate.

We have already addressed this point in large part. USA Check Cashers appears to be challenging the predominance requirement, and the starting point for our analysis is whether a common wrong has been alleged against USA Check Cashers respecting all class members. *See BPS, Inc. v. Richardson, supra.* Again, as already underscored in this opinion, there are overarching common questions present in this case as the circuit court outlined in its order. Those questions include: whether USA Check Cashers' transactions were loans with interest accruing and whether those transactions violated the Arkansas Constitution. We conclude that these common questions predominate over individual questions. The mere fact that individual issues and defenses may be raised by the company regarding the recovery of individual members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing which must be resolved for all class members. *Newberg on Class Actions* speaks directly to this point:

Challenges based on the statutes of limitations, fraudulent concealment, releases, causation, or reliance have usually been rejected and will not bar predominance satisfaction because these issues go to the right of a class member to

recover, in contrast to underlying common issues of the defendant's liability.

*SEECO, Inc. v. Hales*, 330 Ark. at 413, 954 S.W.2d at 240 (quoting 1 Herbert B. Newberg, *Newberg on Class Actions* § 4.26, at 4-104 (3d ed. 1992)).

Again, common issues, as far as alleged wrongdoing and defenses, predominate in this case, and we affirm the trial court on this point.

*USA Check Cashers*, 349 Ark. at 83-84. Clearly, this court has already addressed the general issues of superiority and predominance in a check-cashing case, and The Money Place raises no new issues for consideration, nor does it raise any new arguments as to why these elements cannot be met here. As such, the reasoning this court employed in *USA Check Cashers* addressing the provisions of Rule 23(b) applies equally to this case. Therefore, we affirm the trial court's certification of the class.

GLAZE and IMBER, JJ., not participating.