THE/FRE, INC., *d/b/a* Pay-Less Check Advance, Reap, Inc., and Fred Pearson, Individually and *d/b/a* Pay-Less Check Advance *v.* Sheila MARTIN, Rick Ingram, and Jimmie Sue Spencer, Individually and *o/b/o* A Class of Similarly Situated Persons

01-1373                                                   78 S.W.3d 723

Supreme Court of Arkansas
Opinion delivered June 27, 2002

*Mixon, Parker, & Hurst, PLC,* by: *Donald L. Parker, II* and *Harry S. Hurst, Jr.; Wright, Lindsey & Jennings, LLP,* by: *Claire Shows Hancock,* for appellants.

*Orr, Scholtens, Willhite, & Averitt, PLC,* by: *Chris A. Averitt, Jay Scholtens,* and *Kevin J. Orr; Morgan & Turner,* by: *Todd Turner,* for appellees.

RAY THORNTON, Justice. This is an interlocutory appeal from an order certifying a class action. We have jurisdiction pursuant to Ark. R. App. P.—Civ. 2(a)(9). We conclude that, in accordance with recent cases establishing criteria for class certifications, the trial court did not abuse its discretion in certifying the class, and we affirm the trial court's order.

On June 27, 2000, appellee, Sheila Martin, filed her complaint in this action. That complaint was amended on September 25, 2000, to include appellee, Rick Ingram, and again on January 12, 2001, to include appellee, Jimmie Sue Spencer. Appellees filed their action individually and on behalf of a class of similarly situated persons who have done business with appellants, THE/ FRE, Inc., d/b/a Pay-Less Check Advance ("Pay-Less"), Reap, Inc., Fred Pearson, individually, and d/b/a Pay-Less Check Advance, who engage in the check-cashing business in accordance with the Arkansas Check-Cashers Act, codified at Ark. Code Ann. § 23-52-104(b) (Repl. 2000). In their complaint, appellees alleged that the service fees charged in connection with check-cashing transactions are loans, and further alleged that such service

fees are usurious, in violation of Article 19, section 13, of the Arkansas Constitution.

Appellee Martin engaged in business with the Pay-Less branch office located in Jonesboro. In her affidavit, Martin states that in December 1998, she gave Pay-Less a check in the amount of $230.00, which Pay-Less promised not to cash for two weeks. The amount financed was $200.00 with a finance charge of $30.00. In exchange, Pay-Less loaned her $200.00. Two weeks later, she was told by Pay-Less that she could pay off the check or pay an additional $30.00 to renew the loan. She opted to pay an additional $30.00. She further states that from December 1998 to June 1999, she renewed her loan with Pay-Less every two weeks. In June of 1999, Pay-Less required her to pay $33.33 instead of $30.00. She would pay $233.33 in cash to Pay-Less and write Pay-Less a check in the amount of $233.33. Pay-Less would then give her $200.00 and hold the check for two weeks. Martin continued renewing these payments until June of 2000. She states that by June, 2000, she made more than $1,100.00 in payments for the $200.00 loan, and she still owed $233.33 to Pay-Less. Her checking account included the name of appellee Ingram, and Ingram was the one who actually went to Pay-Less to renew the loan.

Appellee Ingram states similar facts in his affidavit.

Appellee Spencer engaged in transactions from the Pay-Less branch office in Jonesboro. In her affidavit, appellee Spencer states that in the fall of 1999, she gave Pay-Less a check in the amount of $233.33, which Pay-Less promised not to cash for two weeks. The amount financed was $200.00 with a finance charge of $33.33 at 434.480% interest. In exchange, Pay-Less loaned her $200.00 in cash. Two weeks later, Pay-Less increased her loan to $250.00 in exchange for a check in the amount of $288.89. Two weeks later, Pay-Less increased her loan to $300.00 cash in exchange for a check in the amount of $344.44. She further states that, when she returned to Pay-Less two weeks later, she was told that she could pay off the check or pay an additional $44.44 cash to renew the loan. She paid $344.44 in cash to Pay-Less and wrote Pay-Less a check in the amount of $344.44. Pay-Less then returned to her $300.00 in cash and agreed to hold the new check

for $344.44 for two additional weeks. She continued making renewal payments until July of 2000.

On June 23, 2000, appellee Spencer signed a deferred presentment agreement with appellant that contained arbitration provisions. These arbitration provisions provide that all disputes between the parties shall be resolved by binding arbitration, except that both parties reserve the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. The agreement also provides that a customer waives his or her right to serve as a representative to participate as a member of a class of claimants in any lawsuit filed against appellants. Appellants moved to compel arbitration in this action and to stay the trial court proceedings, but the trial court denied the motion. The denial of that motion is the subject of a separate appeal before this court.

On October 23, 2000, appellees filed a motion to certify the class, alleging that the check-cashing transactions constitute loans, and the fees charged in connection with those loans are usurious and violative of Article 13, section 13 of the Arkansas Constitution. On August 17, 2001, the trial court granted appellees' motion to certify the class. In its order, the trial court states:

> The Court hereby defines, subject to subsequent modification and/or establishment of sub-classes, the class as follows: *any and all persons who have engaged in deferred presentment transactions with the defendant check casher(s), anywhere in the State of Arkansas.*

(Emphasis added.)

The trial court further found:

> 3. Plaintiff's experience with the defendant check casher(s) and the transaction alleged are typical of all "check cashing" customers of defendants and transactions between such customers and defendants.
>
> 4. The class of persons . . . is so numerous that joinder of all members is impracticable.
>
> 5. The claims of plaintiffs and asserted defenses are typical of the claims of the class.
>
> 6. Questions of law or fact common to the members of the class predominate over any questions affecting only individual

members and that a class action is superior to other available methods for the fair and efficient adjudication of this matter.

7. Plaintiffs are adequate persons to serve as class representatives and should be appointed as representatives of the class.

8. Plaintiffs' counsel have demonstrated their competency to serve as class counsel and possess the resources and expertise necessary to adequately represent the class and should be approved as class counsel.

On August 17, 2001, the trial court's order was entered, and on September 17, 2001, appellants timely filed their notice of appeal. Appellants bring their appeal from this trial court's order granting the certification of the class. We review class certification under an abuse of discretion standard. *Cheqnet Sys. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995).

Appellants' sole allegation of error is that the trial court erred in granting appellees' motion for class certification. They argue that the requirements of Rule 23 of the Arkansas Rules of Civil Procedure are not met and that class certification should have been denied.

Rule 23 of the Arkansas Rules of Civil Procedure states:

(a) *Prerequisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this sec-

tion may be conditional and it may be altered or amended before the decision on the merits.

*Id.* The law is well-settled that the six criteria for class certification, set out in Ark. R. Civ. P. 23(a) and (b) are: (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance; and (6) superiority. *USA Check Cashers of Little Rock, Inc. v. Island*, 349 Ark. 71, 76 S.W.3d 243 (2002).

■ We have departed from the standard applied in federal rules by our decision in *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997), and its progeny where we have held that a rigorous analysis is not required for certification of a class in Arkansas. *Id.*

Here, appellants challenge the adequacy of representation, typicality, predominance, and superiority requirements under Rule 23. The Rule 23 requirements of numerosity and commonality are not raised in this appeal.

## I. Adequacy

■ First, appellants challenge the requirement of adequacy, which states that the "representative parties will fairly and adequately protect the interests of the class." Ark. R. Civ. P. 23(a)(4). We have interpreted Rule 23(a)(4) to include three elements:

> (1) the representative counsel must be qualified, experienced and generally able to conduct the litigation; (2) that there be no evidence of collusion or conflicting interest between the representative and the class; and (3) the representative must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation.

*USA Check Cashers, supra* (citing *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997)).

■ ■ In their affidavits, appellees state that they are willing to serve as class representatives and that they can adequately and fairly protect the interests of the absent class members who have also engaged in similar transactions with Pay-Less. Appellees also state that their attorneys would fairly and competently

represent the class. The attorneys also present affidavits in which they outline their credentials as having the ability to fairly and competently represent the class of absent class members. Absent a showing to the contrary, we may presume that the representative's attorney will vigorously and competently pursue the litigation. *Mega Life, supra* (citing Herbert B. Newberg, *Newberg on Class Actions*, §§ 3.24, 3.42 (3d. ed. 1992)). Additionally, there is no evidence before us that appellees have a conflict of interest with other members of the class. Similar to our holding in *USA Check Cashers, supra*, the fact that appellee Spencer signed an agreement with an arbitration clause, while appellees Martin and Ingram had not, fails to show a conflict of interest with other class members. Therefore, the trial court did not err in finding that the first two criteria are met.

■ ■ With regard to the third criterion regarding adequacy, we have held that the standard of adequacy is met if the representative displays a minimal level of interest in the action, familiarity with the challenged practices, and the ability to assist in litigation decisions. *USA Check Cashers, supra*. Here, the trial court found that appellees were adequate persons to serve as class representatives and that appellees' counsel could adequately represent the class. Appellees state in their affidavits that their attorneys have discussed the duties of being a class representative, are willing to comply with those duties, have reviewed the pleadings in the case, have been informed of the case history, and that they are pleased with their attorneys' representation. They have demonstrated that they have at least a minimal level of interest in the cause of action, under *USA Check Cashers, supra*. Therefore, we conclude that the trial court did not abuse its discretion in finding that appellees have fulfilled the adequacy requirement.

■ Appellants' argument regarding appellant Pearson's action of piercing the corporate veil is inappropriate for the present appeal. That is an issue to be resolved at a trial on the merits. The subject of this appeal strictly deals with whether a class was properly certified. We have repeatedly held that we will not delve into the merits of a case when reviewing an order denying or granting class certification. *USA Check Casher, supra*.

## II. Typicality

Secondly, appellants argue that the trial court erred in finding that appellees do not meet the typicality requirement of Rule 23. Specifically, appellants argue that because appellants engaged in the check-cashing business prior to the enactment of the Arkansas Check Casher's Act, codified at Ark. Code Ann. § 23-52-101 *et seq.* (Repl. 2000), appellees who did business with appellants after the act became effective are not typical of those members of the class who engaged in check-cashing transactions prior to the act.

Arkansas Rule of Civil Procedure 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Id.* Our case law is clear that the essence of the typicality requirement is the conduct of the defendants and not the varying fact patterns and degree of injury or damage to individual class members. *BNL Equity Corp. v. Pearson*, 340 Ark. 351, 10 S.W.3d 838 (2000). We have said that a representative's claim is typical of the class members' claim under Rule 23(a)(3) if the representative's claim arises from the same wrong allegedly committed against the class. *BPS Inc. v. Richardson*, 341 Ark. 834, 20 S.W.3d 403 (2000); *see also Cheqnet v. Montgomery, supra* (holding that the typicality requirement was met when the class representative's injuries and damages arose from the collection or attempt to collect for dishonored checks in violation of Arkansas statutory law).

In the present case, the common issue is whether these check-cashing transactions are considered loans and whether the fees charged in connection with those transactions are usurious in nature and violative of the Arkansas Constitution. Thus, each of these claims arises from appellants' business practices. The fact that the transactional amounts may vary among class members does not make this action fail the typicality requirement. *See Cheqnet, supra.*

Because each of these common claims arose from the "same wrong," allegedly committed by appellants, we hold that the trial court did not abuse its discretion in finding that appellees' claims and asserted defenses are typical of the claims of the class.

### III. Rule 23(b): superiority and predominance

For their last allegation of error, appellants argue that the trial court erred because the trial court certified a class consisting of all persons in Arkansas who have engaged in similar transactions with appellants. Specifically, appellants argue that resolving individual questions for each transaction will "overwhelm the court," causing individual questions of fact to predominate over the common legal questions.

█ Arkansas Rule of Civil Procedure 23(b) includes the requirements of predominance and superiority. In *USA Check Cashers, supra*, we said:

> This court has held with respect to superiority that the requirement is satisfied if class certification is the more "efficient" way of handling the case and if it is fair to both sides. Real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary.

*Id.* (citations omitted).

█ █ With regard to the superiority requirement, we also said in *USA Check Cashers, supra*, that the issues presented concern a fee in exchange for an agreement to defer presentment of the customer's check for payment and whether that fee is usurious. *Id.* The same is true in the present case. Because of the pervasiveness of this issue in the transactions of all potential class members, it would be inefficient for "any and all persons who have engaged in deferred presentment transactions with [appellants]" to file individual suits. Further, we have held that a trial court can decertify a class should the action become too unwieldy. *USA Check Cashers, supra.* Therefore, the trial court did not abuse its discretion in finding that a class action is the superior method for adjudicating the class members' claims.

█ █ With regard to the predominance requirement, we have said that common claims must predominate over any questions affecting only the individual members as required by Rule 23(b). *USA Check Casher, supra.* Appellees contend that "it is not necessary to determine when each transaction occurred, the

terms of each transaction, the disclosures made to each customer, etc." We agree. Appellants' exhibits, including copies of Pay-Less's deferred presentment agreements, reflect the disclosures, including the interest rate charged by appellants. The fact that individual issues and defenses may be raised by appellants regarding the recovery of individual members cannot defeat class certification. Therefore, we hold that the trial court did not abuse its discretion in finding that common issues predominate in this case, and that these common questions predominate over individual questions.

Based upon the recent precedent in our decisions, which allows a less-than-rigorous analysis for establishing class actions, and based upon our well-established standard of review, we affirm the trial court's grant of class certification.

Affirmed.

GLAZE, J., not participating.