NATIONAL CASH, INC., Charles A. Hawbaker and Paul Mather
*v.* Regayla LOVELESS

04–565                                        205 S.W.3d 127

Supreme Court of Arkansas
Opinion delivered March 10, 2005

*Ralph C. Williams*, for appellants.

*The Nixon Law Firm,* by: *David G. Nixon* and *Theresa L. Pockrus,* for appellee.

JIM HANNAH, Chief Justice. Appellants National Cash, Inc., Paul Mather, and Charles Hawbaker appeal the Benton County Circuit Court's certification of a class of plaintiffs, including appellee class representative Regayla Loveless, in this class-action lawsuit. The appellants further appeal the circuit court's denial of their motion to compel arbitration. We find no error and, accordingly, we affirm.

Regayla Loveless and Deborah Ratliff[1] filed a complaint, on behalf of themselves and on behalf of a class of similarly situated persons who have done business with National Cash, Paul Mather, individually, and Charles Hawbaker, individually, who engage in the check-cashing business. In a typical transaction, the customer would use the services of National Cash by presenting a check to National Cash in the amount of $177.78, for which the customer received $150 in return. The interest or fee of $27.78 allowed the customer to keep the $150 for two weeks. At the end of the two-week deferment period, the customer could then redeem the check by presenting cash to National Cash in the amount of $177.78, write another check for deferred deposit after paying additional fees, or allow the check to be deposited.

In the complaint, Loveless argued that the deferred presentment was, in fact, a loan, and that the service fees charged in connection with the check-cashing transactions are usurious, as provided in Article 19, Section 13 of the Arkansas Constitution. In addition, Loveless argued that she and others similarly situated should be allowed to pierce the corporate veil and sue Mather and Hawbaker individually, as the two were the only shareholders of National Cash.

On September 19, 2002, Loveless filed a motion for class certification. In its response, National Cash argued that a class action was not proper because some of the members of the proposed class "would be subject to different defenses, such as estoppel or laches." Further, National Cash filed a "Motion for Transfer and Stay Pending Arbitration." Citing its "Additional Terms and Conditions" agreement, National Cash contended that all parties mutually agreed to seek adjudication of any disputes in

---

[1] Ratliff was subsequently dismissed as a named plaintiff.

small claims court or, in the event that the small claims court did not have jurisdiction of a matter, the parties agreed to resolve disputes by arbitration.

Following a hearing, the circuit court granted the motion for class certification. In addition, the circuit court denied National Cash's motion to compel arbitration.

### Class Certification

██ This court reviews a circuit court's grant of class certification under an abuse-of-discretion standard. *Tay-Tay, Inc. v. Young*, 349 Ark. 675, 80 S.W.3d 365 (2002); *The Money Place, LLC v. Barnes*, 349 Ark. 518, 78 S.W.3d 730 (2002). In reviewing a class-certification order, this court focuses on the evidence in the record to determine whether it supports the circuit court's conclusion regarding certification. *Arkansas Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 78 S.W.3d 58 (2002). However, this court will not delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met. *Id.*

██ The six criteria for class certification are set out in Ark. R. Civ. P. 23(a) and (b): (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. *See USA Check Cashers of Little Rock, Inc. v. Island*, 349 Ark. 71, 79, 76 S.W.3d 243, 247 (2002). In this appeal, National Cash challenges the circuit court's finding that the superiority requirement is met in this action. This court has held with respect to superiority that the requirement is satisfied if class certification is the more "efficient" way of handling the case and if it is fair to both sides. *USA Check Cashers*, 349 Ark. at 82, 76 S.W.3d at 248-49. Real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. *Id.* at 82, 76 S.W.3d at 249.

In the order certifying the class, the circuit court found that the certification of the action as a class action is superior to handling each cause of action individually for the following reasons:

(1) It is more efficient;

(2) It is judicially inefficient to require in excess of 2,200 potential litigants to individually litigate their claims, considering the perva-

siveness of the overarching issue of Defendant National Cash's uniform practice of requiring a fee in exchange for an agreement to defer presentment of the customer's check for payment and whether that fee is usurious interest;

(3) It is fair to both sides; and

(4) The potential recovery to each class member is expected to be relatively small and would not justify contingency fee cases nor cases in which attorneys charge on an hourly basis.

. . .

■ National Cash argues that class certification is not the more efficient way to handle disputes when the benefits to the class members are less than each class member could obtain in an individual lawsuit. To support its proposition, National Cash argues that settlement agreements in two recent cases show that class members "were to receive a maximum of 80% of what they could prove themselves to be entitled to." This argument is unpersuasive. As Loveless points out, National Cash cites no authority in support of its assertion that a comparison of settlements achieved in other class actions is a criterion for determining whether a class should be certified. When a party cites no authority or convincing argument on an issue, and the result is not apparent without further research, the appellate court will not address the issue. *Raley v. Wagner*, 346 Ark. 234, 57 S.W.3d 683 (2001). Because National Cash has failed to provide this court with a convincing argument on the issue, we will not address this argument on appeal.

■ National Cash also argues that pursuing a class–action lawsuit is not in Loveless's best interest because if she prevails in this lawsuit as a part of a class, she and other class members will receive only a fraction of what they could individually recover in small claims court. National Cash asserts that if all of the disputed transactions are found to be loans and the fees charged are found to be usurious, it will not have the assets to pay the full amount of all claims. Whether Loveless and others will receive the full amount of recovery due or whether National Cash will have assets to satisfy all the claims remains to be seen. Again, we will not delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met. *Hicks, supra.*

■■ National Cash next argues that due process requires that prior to class certification, defendants should be entitled to question each member of the proposed class and determine if any defenses are available for each member. Indeed, National Cash may have defenses available to it as to various individual members, but this is no reason to deny certification. *See USA Check Cashers, supra.* The mere fact that individual issues and defenses may be raised by the company regarding the recovery of individual members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing which must be resolved for all class members. *USA Check Cashers,* 349 Ark. at 83, 76 S.W.3d at 249-50; *see also Tay-Tay, supra; The Money Place, supra.* In the instant case, the circuit court found that the predominant issue is whether the fees assessed by National Cash in exchange for deferring presentment of checks were usurious. An attempt to raise defenses at this stage is an attempt to delve into the merits of the case. This we will not do. *See, e.g., THE/FRE, Inc. v. Martin,* 349 Ark. 507, 78 S.W.3d 723 (2002); *USA Check Cashers, supra.* We hold that the circuit court did not abuse its discretion in finding that a class action is the superior method for adjudicating class members' claims.

■ We now turn to the appellants' argument that the circuit court erred in certifying the class action against individual defendants Mather and Hawbaker under the theory of piercing the corporate veil. We have previously held that the issue of whether individual defendants should remain in a class-action lawsuit on the theory of piercing the corporate veil is inappropriate in an appeal of an order certifying a class action. *See THE/FRE,* 349 Ark. at 515, 78 S.W.3d at 728. That is an issue to be resolved at a trial on the merits. *Id.* The subject of this appeal deals strictly with whether a class was properly certified. *Id.* We will not delve into the merits of a case when reviewing an order denying or granting class certification. *Id.; USA Check Cashers, supra.*

### Arbitration

■ An order denying a motion to compel arbitration is an immediately appealable order. Ark. R. App. P.–Civ. 2(a)(12); *E-Z Cash Advance, Inc. v. Harris,* 347 Ark. 132, 60 S.W.3d 436 (2001). We review a circuit court's order denying a motion to compel *de novo* on the record. *E-Z Cash, supra.* We note that the arbitration agreement in this case is identical to the arbitration

agreement we found invalid and unenforceable in *E-Z Cash* due to the agreement's lack of mutuality. National Cash concedes that the arbitration agreements are identical; however, National Cash contends that this court may not have had enough facts in *E-Z Cash* to determine the mutuality of the agreement. The agreement provides in relevant part:

ADDITIONAL TERMS AND CONDITIONS OF THIS AGREEMENT

1. *RETURNED CHECK CHARGE AND COLLECTION COSTS.* If the Check is returned to us from your financial institution due to insufficient funds, closed account, or a stop payment order, we have the right to all civil remedies allowed by law to collect the Check and shall be entitled to a returned check fee of $20.00, court costs and reasonable attorney fees pursuant to Act 1216 of 1999, § 6(g).

. . .

1. For purposes of this Agreement, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Applicant/Personal Information Form (the Application), this Agreement (including this arbitration provision and the fees charges) or any prior agreement or agreements between you and us; (b) all counter claims, cross-claims and third-party claims; (c) all common law claims, based upon contract, tort, fraud and other intentional torts; (d) all claims based upon a violation of any state or federal constitution, statute or regulations; (e) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (f) all claims asserted by you individually, as a private attorney general as a representative and/or member of a class of persons, or in any other representative capacity, against us and/or any of our employees, agents, officers, shareholders, directors, or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief.

2. Except as provided in *Paragraph 4* below, all disputes, including the validity of this arbitration provision *shall* be resolved by binding arbitration. Any party to a dispute, including related third parties,

may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of any of the following arbitration organizations to administer the arbitration: the *American Arbitration Association (1-800-778-7879), J.A.M.S., /Endispute (1-800-352-5267)*. However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules. The party receiving notice of arbitration will respond in writing by certified mail, return receipt requested within twenty (20) days. If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If we or a related third party demand arbitration, you must notify us within twenty (20) days in writing by certified mail return receipt requested of your decision to select an arbitration organization or your desire to select a local arbitrator. If you fail to notify us, then we have the right to select an arbitrator organization. The parties to such dispute will be governed by the rules and procedures of such arbitration applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this agreement, including the limitations on the arbitrator below. You may obtain a copy of the rules and procedures by contacting the arbitration organization listed above.

. . .

4. ALL PARTIES, *INCLUDING RELATED THIRD PARTIES, SHALL RETAIN THE RIGHT TO SEEK ADJUDICATION IN A SMALL CLAIMS TRIBUNAL FOR DISPUTES WITHIN THE SCOPE OF SUCH TRIBUNAL'S JURISDICTION.* Any dispute which cannot be adjudicated within the jurisdiction of a small claims tribunal *shall* be resolved by the binding arbitration set out in this Agreement. Any appeal of a judgement from a small claims tribunal *shall* be resolved by binding arbitration.

As previously stated, in *E-Z Cash, supra,* we held that the arbitration agreement was invalid and unenforceable because the agreement lacked mutuality. Here, National Cash argues that in *E-Z Cash, supra,* this court misread the terms of the arbitration agreement and failed to recognize that under the terms of the agreement, National Cash was required to resolve its disputes in small claims court or by arbitration. We rejected the same argument in *The Money Place, LLC v. Barnes,* 349 Ark. 411, 78 S.W.3d 714 (2002), where we stated:

The language in this arbitration provision is very similar to the provision in *E-Z Cash Advance, supra*. In this case, however, The Money Place argues that this court misread the above terms in the *E-Z Cash Advance* case because this court failed to recognize that under the terms of the arbitration agreement, The Money Place was required to arbitrate and/or take its collection claims to small claims court. This argument is based upon the principle that the court should not give effect to one contract provision to the exclusion of others, citing *RAD-Razorback, Ltd. Partnership v. B.G. Coney Co.*, 289 Ark. 550, 713 S.W.2d 462 (1986). This same argument was rejected in *E-Z Cash Advance, supra*. This court stated that the argument was disingenuous in light of the preceding provision governing collection of debts. Under that provision, The Money Place has the right to pursue all civil remedies when a check is returned. As in *E-Z Cash Advance, supra*, The Money Place may sue to collect and recover amounts, including fees, attorney fees, and court costs. As we said in *E-Z Cash Advance*, 347 Ark. at 140:

> Taking into account their line of business, it is difficult to imagine what other causes of action against a borrower remain that E-Z Cash would be required to submit to arbitration. Harris and other borrowers, however, do not have the same ability to seek relief in the court system. Thus, the agreement to arbitrate is not supported by sufficient consideration, because Harris is the only party that has promised to forego her rights to seek redress in the court system. As previously stated, Harris's promise to submit to arbitration is not enforceable, because E-Z Cash has the option of pursuing arbitration or bringing suit in court. Because this arbitration agreement lacks the element of mutuality, it is not a valid and enforceable agreement. Accordingly, the trial court did not err in denying E-Z Cash's motion to compel arbitration.

We reach the same conclusion in this case. Because there is no mutuality, the arbitration provision is not valid and is not subject to enforcement under any arbitration act.

*The Money Place*, 349 Ark. at 417-18, 78 S.W.3d at 719.

Here, we reach the same result. Like the plaintiffs in *E-Z Cash* and *The Money Place*, Loveless is the only party that has promised to forego her rights to seek redress in the court system. Her promise to submit to arbitration is not enforceable because National Cash has the option of pursuing *all* civil remedies allowed

by law, while Loveless and other class members do not have the same ability to seek relief in the court system.

Still, National Cash insists that the present case is distinguishable from *E-Z Cash* because in that case we did not consider the fact that if the check casher is found to be a lender, as Loveless suggests, the check casher is not entitled to bring actions in small claims court, regardless of the terms of the arbitration agreement. Apparently, National Cash reasons that if it is found to be a lender, then pursuant to Ark. Code Ann. § 16-17-604 (Repl. 1999),[2] it is barred from bringing an action in small claims court and, pursuant to the terms of the arbitration agreement, it could only resolve disputes by arbitration, whereas the customer would still be allowed to resolve disputes in both small claims court and by arbitration. Thus, National Cash argues that if it is found to be a lender, then the arbitration agreement "actually tilts in favor of the customer instead of the check casher and should not be invalidated because it favors the non-preparing customer." We find no merit in this argument. Even assuming National Cash was found to be a lender and could not bring an action in small claims court, it could still bring an action in circuit court because, pursuant to the arbitration agreement, it could pursue "all civil remedies allowed by law." Because the arbitration agreement lacks mutuality, it is not a valid and enforceable agreement. We hold that the circuit court did not err in denying National Cash's motion to compel arbitration.

Affirmed.

---

[2] Section 16-17-604, which is included in the Small Claims Procedure Act, codified at Ark. Code Ann. § 16-17-601 (Repl. 1999), provides, in relevant part: "No action may be brought under this subchapter . . . by any person, firm, partnership, association, or corporation engaged, either primarily or secondarily, in the business of lending money at interest."